Parents of Two Minors *v.* Bristol Division of the Juvenile Court Department.

## PARENTS OF TWO MINORS *vs*. BRISTOL DIVISION OF THE JUVENILE COURT DEPARTMENT & another.[1]

Bristol.   March 3, 1986. — July 9, 1986.

Present: HENNESSEY, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Moot case, Appeal. *Supreme Judicial Court,* Superintendence of inferior courts. *Juvenile Court,* Jurisdiction. *Jurisdiction,* Juvenile Court, Order in aid of child abuse investigation. *Department of Social Services. Child Abuse.*

The question of a Juvenile Court judge's authority to order the parents of two minor children to permit a nonemergency visit to their home by an employee of the Department of Social Services for the purpose of investigating an anonymous report of child abuse was a matter of public importance yet likely to evade review, and where the issue had been fully argued in an adversary proceeding this court did not treat it as moot, even though the investigation had been concluded. [849]

An action under G. L. c. 211, § 3, invoking the supervisory powers of the Supreme Judicial Court was an appropriate means for the parents of two minor children to obtain review of a Juvenile Court order that they permit a nonemergency visit to their home by an employee of the Department of Social Services for the purpose of investigating an anonymous report of child abuse. [849-851]

A Juvenile Court judge had no statutory or common law authority to order the parents of two minor children to permit a nonemergency visit to their home by an employee of the Department of Social Services for the purpose of investigating an anonymous report of child abuse. [851-853]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 16, 1985.

The case was heard by *Nolan, J.*

*Catherine E. M. Sullivan* (*Thomas G. Shapiro & Marjorie Heins* with her) for the parents.

---

[1] Department of Social Services.

*William L. Pardee,* Assistant Attorney General, for Bristol Division of the Juvenile Court Department & another.

O'CONNOR, J. This case raises the question whether a judge of a Juvenile Court has authority to order parents of minor children to submit to a nonemergency home visit by an employee of the Department of Social Services (DSS), investigating an anonymous report of child abuse. Our answer to that question is "no."

By a petition filed on May 15, 1985, and amended on May 16, the DSS requested the Juvenile Court to order the plaintiff parents of two minor children to allow DSS personnel "to enter the [parents'] home and view and speak with the children." In support of its petition, DSS submitted an affidavit from one of its employees. The affidavit stated that the DSS "Child Abuse Hot-Line" received an anonymous telephone call on May 8, 1985, reporting that the plaintiffs were abusing their children. In substance, the affidavit averred that the caller had seen the parents committing many acts of abuse against their children, a six year old girl and a five year old boy. According to the affidavit, the caller, who claimed to have been in close contact with the family for approximately four years, had said that on numerous occasions she had observed bruises on the children allegedly caused by parental physical abuse.

The affidavit further stated that on May 9, 1985, the case had been assigned to a DSS investigator, who had made an attempt to substantiate the allegations of abuse. The parents, however, explaining that they wished to consult an attorney first, chose not to cooperate with the investigation. On May 14, 1985, the affidavit continued, the parents' attorney informed the DSS that he would not advise his clients to cooperate with the DSS's proposed investigation within the home.

A hearing on the DSS amended petition was held on May 16, 1985, the day on which it was filed. The evidence consisted of the aforementioned affidavit and testimony by the chief of social services, who stated that the DSS file on the plaintiffs consisted entirely of the anonymous G. L. c. 119, § 51A (1984 ed.), report referred to in the affidavit. Reasoning that the DSS had a "plain right" to investigate under the statute, and that

848                      397 Mass. 846

Parents of Two Minors *v.* Bristol Division of the Juvenile Court Department.

the parents had no right to resist the investigation, the judge ordered the parents to allow DSS to enter the home and speak to the children. The plaintiffs moved to stay the order pending appeal, but the judge denied their motion.

Following the issuance of the order of entry, also on May 16, the plaintiffs filed a petition in the Supreme Judicial Court seeking relief under G. L. c. 211, § 3 (1984 ed.). The petition requested that the order be quashed, that the judges of the Juvenile Court be restrained from issuing such orders, and that the DSS be restrained from taking action pursuant to the order. After a hearing, a single justice of this court denied the petition without opinion. The plaintiffs appealed to the full court.

On September 6, 1985, the DSS moved in this court that the petition be dismissed for mootness. Accompanying its motion, the DSS filed an affidavit stating that on May 31, 1985, two employees of the DSS had gone to the plaintiffs' home, had spoken with the children, and had concluded the investigation. The affidavit also stated that the family had moved to a location unknown to the DSS. We deferred action on the motion to dismiss until now.

In addition to raising the mootness issue, the defendants argue on appeal that the single justice properly denied the parents' claim under G. L. c. 211, § 3, since their petition failed to state a case for extraordinary relief or, alternatively, that the single justice properly denied the petition on substantive grounds. The parents oppose those arguments and assert that the Juvenile Court judge's order of entry was unauthorized and violated their rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.

For reasons expressed below, we reject the defendants' procedural arguments, and we consider on its merits the question whether the judge had statutory or common law authority to order the plaintiffs to allow an employee of the DSS to enter their home to investigate an anonymous nonemergency report of child abuse. In view of our conclusion that the judge did not have that authority, we do not reach the constitutional issues argued by the parties.

1. *Mootness.* According to an affidavit filed in this court in conjunction with the DSS motion to dismiss for mootness, two DSS employees conducted their investigation at the plaintiffs' home on May 31, 1985, and the investigation was concluded on that date. When the parties no longer have a stake in the determination of an issue, the issue is moot. *Attorney Gen.* v. *International Marathons, Inc.,* 392 Mass. 370, 372 (1984). *Hashimi* v. *Kalil,* 388 Mass. 607, 608 (1983). It appears, therefore, that the question whether the judge had the authority to order the plaintiffs to permit DSS employees to enter their home to investigate is moot. Nevertheless, "we have on occasion answered questions in moot cases where the issue was one of public importance, where it was fully argued on both sides, where the question was certain, or at least very likely, to arise again in similar factual circumstances, and especially where appellate review could not be obtained before the recurring question would again be moot." *Lockhart* v. *Attorney Gen.,* 390 Mass. 780, 783 (1984). Those conditions are met here. Therefore, we do not dismiss this case as moot. See *Brach* v. *Chief Justice of the Dist. Court Dep't,* 386 Mass. 528, 533 (1982).[2]

2. *Propriety of relief under G. L. c. 211, § 3.* "Our cases have emphasized that relief under G. L. c. 211, § 3, may not be sought merely as a substitute for normal appellate review. . . . The supervisory power of this court is used sparingly. . . . It should be exercised only in exceptional circumstances and where necessary to protect substantive rights in the absence of an alternative, effective remedy." (Citations omitted.) *Soja* v. *T.P. Sampson Co.,* 373 Mass. 630, 631 (1977). See *Francis* v. *District Attorney for the Plymouth Dist.,* 388 Mass. 1009, 1010 (1983); *Hadfield* v. *Commonwealth,* 387 Mass. 252, 255 & n.2 (1982). Unquestionably, the present litigation involves a substantive right. Furthermore, there is no alternative, effective remedy. No statute provides a right

---

[2] In *Lockhart* v. *Attorney Gen., supra* at 784, we noted that we were unaware of any case in which we had decided a moot constitutional question. Since we do not reach the plaintiffs' constitutional arguments, this principle is not relevant here.

of appeal in the circumstances presented by this case. An adjudication by a Juvenile Court judge that a child is in need of care and protection may be appealed under G. L. c. 119, § 27 (1984 ed.). Appeal from an adjudication that a child is in need of services is provided in c. 119, § 39I (1984 ed. & Supp. 1985), and c. 119, § 56 (1984 ed.), provides for appeals from adjudications of delinquency. However, c. 119 is silent about a right of appeal from an order of a judge of the Juvenile Court requiring parents to grant entry to their home to DSS personnel and no such right is provided by any other statute.

Analogizing the judge's order to an interlocutory discovery order, the defendants argue that the plaintiffs do have an alternative and effective means of obtaining review. The defendants point out that the plaintiffs could have obtained appellate review by refusing to comply with the order, incurring an adjudication of contempt, and appealing from that adjudication. The defendants direct our attention to the case of *Cronin* v. *Strayer,* 392 Mass. 525, 529 (1984), in which we dismissed an appeal of nonparty witnesses from an order requiring them to submit to discovery. In that case, we acknowledged the interlocutory nature of such an order, *id.* at 529-530, and we adopted the reasoning of the United States Court of Appeals for the Seventh Circuit expressed in *Marrese* v. *American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1158 (7th Cir. 1984), rev'd on other grounds, 470 U.S. 373 (1985), that "[c]onfining the right to get appellate review of discovery orders to cases where the party [or witness] against whom the order was directed cared enough to incur a sanction for contempt is a crude but serviceable method . . . of identifying the most burdensome discovery orders and in effect waiving the finality requirement for them." *Cronin* v. *Strayer, supra* at 529. We concluded that nonparty witnesses have no right of appeal from a discovery order, and that their only remedy is to incur contempt and then to appeal. *Id.* at 530. Our holding was consistent with our holdings in other cases in which we have refused to consider appeals from interlocutory orders because such appeals tend to interfere with the progress of ongoing litigation.

See *Beit* v. *Probate & Family Court Dep't,* 385 Mass. 854, 857 (1982); *Borman* v. *Borman,* 378 Mass. 775, 779 (1979).

The G. L. c. 211, § 3, petition in this case does not interrupt or interfere with ongoing litigation. The order sought to be reviewed is a final order. In those circumstances, we deem it inappropriate to require the plaintiffs to incur an adjudication of contempt in order to obtain review. Therefore, we turn to the merits of the controversy.

3. *The authority of the judge.* General Laws c. 119, § 51A, requires a physician, medical intern, and numerous other persons, who in their professional capacity have reasonable cause to believe that a minor child is suffering from abuse or neglect, to report that condition to the DSS. Under the statute, other persons may make such a report. General Laws c. 119, § 51B (1984 ed.), provides that the DSS must investigate such a report, and that "[t]he investigation shall include a home visit at which the child is viewed, if appropriate, a determination of the nature, extent and cause or causes of the injuries, the identity of the person or persons responsible therefor, the name, age and condition of other children in the same household, an evaluation of the parents and the home environment, and all other pertinent facts or matters." Section 51B is silent with respect to the power of a judge to order parents to permit a home visit. Nevertheless, the judge ordered the plaintiff parents to allow the DSS to enter their home so that the DSS could fulfil its statutory responsibility to investigate. The question for determination is whether the judge was authorized to issue that order.

The Juvenile Courts, like all the courts of the Commonwealth, except the Supreme Judicial Court, are creatures of the Legislature and derive their powers, other than those powers that are inherent in all courts, see *Brach* v. *Chief Justice of the Dist. Court Dep't,* 386 Mass. 528, 535 (1982), from the Legislature. *Commonwealth* v. *Leach,* 246 Mass. 464, 470-471 (1923). Legislative grants of power "must either be articulated expressly or be capable of being deduced by 'necessary and inevitable' implication . . . or by 'fair implication.'" *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.,*

374 Mass. 640, 663 (1978), quoting *Mountfort* v. *Hall,* 1
Mass. 443, 457 (1805), and *Crocker* v. *Superior Court,* 208
Mass. 162, 171 (1911).

The Juvenile Court Department of the Trial Court is estab-
lished by G. L. c. 211B, § 1 (1984 ed.). By virtue of G. L.
c. 218, § 59 (1984 ed.), Juvenile Courts have the same powers
"within their respective jurisdictions" as District Courts, and
they have equity jurisdiction in all matters arising under G. L.
c. 119. General Laws c. 218, § 60 (1984 ed.), grants Juvenile
Courts exclusive jurisdiction "over cases of juvenile offenders
under seventeen and cases of neglected, wayward or delinquent
children," and over proceedings referred to them by the Su-
preme Judicial Court under G. L. c. 211, § 4A (1984 ed.).
The Juvenile Courts are authorized by G. L. c. 119, §§ 24-27
(1984 ed.), to conduct hearings and issue orders relative to the
protection and care of children, and they are authorized by
c. 119, § 39E (1984 ed.), to conduct hearings and issue orders
concerning "[c]hildren in need of services." Chapter 119,
§§ 52-63 (1984 ed.), provide for delinquency hearings and
adjudications.

No provision in G. L. c. 119 or in any other statute expressly
authorizes Juvenile Courts to issue orders designed to facilitate
a nonemergency DSS investigation under G. L. c. 119, § 51B,[3]
nor is the grant of such power necessarily or fairly implied in
c. 119 or any other statute. Furthermore, it cannot fairly be said
that any of the express powers of the Juvenile Courts require for
their effective exercise that the courts also have the power to
assist the DSS in fulfilling its statutory duty to make investigatory
home visits. Although we do not suggest that the Legislature
could not enact a statute drawn within constitutional limits con-
ferring such authority, no such legislation currently exists.

---

[3] In contrast, G. L. c. 119, § 22 (1984 ed.), directs DSS agents to visit
foster homes, and provides that "[a]n agent who is refused such entry . . .
may make complaint, on oath, to a justice of the court having jurisdiction,
who may thereupon issue a warrant authorizing him to obtain sufficient
aid, and at any reasonable time enter the building designated . . . to inves-
tigate the treatment and condition of a child found there and to remove such
child as herein provided."

The subject of inherent power requires only brief discussion. "Inherent powers of the courts are those 'whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases." *Brach* v. *Chief Justice of the Dist. Court Dep't, supra* at 535, quoting *Sheriff of Middlesex County* v. *Commissioner of Correction,* 383 Mass. 631, 636 (1981). The order here was not in aid of the court's ability to function as a court. Therefore, it cannot rightly be said that the judge had inherent power to order the plaintiffs to open their home to the DSS.

We conclude that the judge did not have authority to order the plaintiffs to submit to a nonemergency home visit by an employee of the DSS investigating an anonymous report of child abuse, and that the plaintiffs were entitled to relief from that order in accordance with their petition under G. L. c. 211, § 3.

The judgment is reversed. A new judgment quashing the order of the Juvenile Court is to enter in the Supreme Judicial Court for the county of Suffolk.

*So ordered.*