**DONALD M[*] and Annette M, Plaintiffs,**

**v.**

**Marie A. MATAVA, individually and in her official capacity as Commissioner of the Massachusetts Department of Social Services, et al., Defendants.**

**Civ. A. No. 84–1212–W.**

United States District Court, D. Massachusetts.

Jan. 30, 1987.

---

[*] This is a case in which the plaintiffs are seeking, in part, expungement of public records relating to alleged child abuse by them. The court has *sua sponte,* deleted their last names from this published opinion to avoid aggravating any injury which might be proven.

Marjorie Heins, Mass. Civil Liberties Foundation, and Keith Halpern, Silverglate, Gertner, Fine & Good, Boston, Mass., for plaintiffs.

John Eklund, Sloane & Walsh, and Suzanne E. Durrell, Asst. Atty. Gen., Government Bureau, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiffs Donald M and Annette M, citizens of the Commonwealth of Massachusetts, have brought this 42 U.S.C. § 1983 action against various officials of the Massachusetts Department of Social Services (the "DSS"), officials of the Chelsea Memorial Health Care Center of Massachusetts General Hospital, and Massachusetts General Hospital ("MGH") as an agent of the DSS. Plaintiffs allege that defendants violated their constitutional rights under the First, Fourth, Ninth, and Fourteenth Amendments by unlawfully entering their home, by substantiating a report of child abuse against them without any supporting evidence, and by coercing them into counseling services by threatening to begin legal proceedings to terminate their parental rights. These acts, plaintiffs claim, violated their right to be free from unlawful searches, invaded their right to family privacy, and deprived them of liberty without due process of law.

Defendants have moved to dismiss or, in the alternative, that summary judgment be granted in their favor. Plaintiffs have opposed these motions and have moved for a stay to allow them to take the depositions of each of the defendants and to conduct

discovery relevant to the dispositive motions. Defendants have opposed plaintiffs' motion for a stay and filed cross-motions for a protective order and to stay discovery while the dispositive motions are pending. While defendants have raised various defenses, the court today decides only the issues of absolute and qualified immunity raised by the public officials who are defendants.

For the reasons stated below, the motion to dismiss is granted with respect to claims for damages and alleged past misconduct against defendant Matava in her official capacity. Plaintiffs may, however, move to amend their complaint again in order to include a prayer for injunctive relief against Matava.

In addition, defendants Bronson and Focht are entitled to qualified immunity for their allegedly unconstitutional entry into plaintiffs' home. Defendant Mancusi is absolutely immune from suit for substantiating the child abuse report against plaintiffs. The other defendants acting as public officials are also entitled to equal immunity to the extent, if any, that their alleged liability derives from the alleged unconstitutional entry into plaintiffs' home or the purported improper substantiation of the child abuse report.

All of the defendants acting as public officials are also entitled to qualified immunity for allegedly coercing plaintiffs into attending family and marriage counseling sessions.

Defendant MGH does not claim a qualified immunity defense. MGH seeks dismissal of plaintiffs' claims for failure to state a claim upon which relief may be granted. The court reserves judgment on this question pending possible discovery and further briefing.

## I. FACTS

Plaintiffs Donald and Annette M are residents of Chelsea, Massachusetts and the parents of two minor children.

The defendants in this case are as follows:

1. Marie Matava, sued individually and in her official capacity as Commissioner of the DSS, the agency authorized to investigate and prosecute child abuse.

2. John Does 1–5, sued individually and in their official capacities as supervisors or policymaking employees of the DSS.

3. Mimi Rabinovitch, Lynn Focht, and Michael Mancusi, sued in their individual and official capacities as social workers employed by the Chelsea Memorial Health Care Center of MGH with which the DSS contracts for the provision of services in support of its functions relating to child abuse.

4. Deborah Hill and Marybeth Bronson, sued individually and in their official capacities as social work supervisors employed by the Chelsea Memorial Health Care Center.

5. MGH as an agent of the DSS.

The alleged facts of this case relevant to the pending motions include the following. In September, 1983 the DSS, acting through the MGH social workers, initiated an investigation of plaintiffs for child abuse and neglect. The DSS's investigation was triggered by an anonymous report that one of plaintiffs' children had been heard crying for prolonged periods. Plaintiffs allege that two social workers, defendants Bronson and Focht, entered their home without a search warrant and without plaintiffs' consent. It is undisputed that defendants did not have a search warrant, but defendants claim that they entered the home and interviewed plaintiffs with plaintiffs' consent.

Bronson and Focht filed a report, but the investigation was terminated when the DSS concluded that there was no evidence of child abuse and, therefore, the DSS decided not to substantiate the report. However, in about November, 1983 the DSS initiated a second investigation after Annette M allegedly told a worker at her son's day care center that she and her husband had had a fight the night before. Defendant Mancusi substantiated this charge on the ground that there was a risk of violence in the family. The report which was substantiated indicated that Annette M had told a day

care worker that her husband sometimes hit her and the children. Annette M denies that she made this statement.

Plaintiffs claim that defendants Mancusi, Focht, and Rabinovitch, acting under the supervision of defendants Hill and Bronson, subsequently coerced them into participating in counseling services by threatening to go to court to take away their children. Plaintiffs further claim that these actions were taken despite the fact that defendants had no evidence of child abuse or neglect. The DSS eventually dropped the case, but stated that pursuant to Mass. Gen. Laws c. 119, §§ 51E–F, the plaintiffs' records would remain on file until their youngest child reaches the age of eighteen.

Plaintiffs' Second Amended Complaint seeks compensatory damages, punitive damages, a declaratory judgment that defendants' actions violated plaintiffs' rights under the United States Constitution, and a declaratory judgment that Mass.Gen. Laws c. 119, §§ 51A–51F is unconstitutional as applied to plaintiffs. The Second Amended Complaint does not request injunctive relief concerning plaintiffs' records.

## II. DISCUSSION

### A. Eleventh Amendment

Defendant Matava, sued individually and in her official capacity as Commissioner of the DSS, contends that the Eleventh Amendment bars plaintiffs' claims for compensatory damages against her in her official capacity, as well as the claim for a declaratory judgment concerning alleged past misconduct in her official capacity. For the reasons stated below, the court agrees.

The Eleventh Amendment to the United States Constitution bars suits against states in federal courts. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*Pennhurst II*); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It also bars suits against state officials for damages where the state is the "real, substantial party in interest." *Pennhurst II*, 465 U.S. at 101, 104 S.Ct. at

908. In this case, the state is the "real, substantial party in interest" in the claim for damages against Matava in her official capacity as the Commissioner of DSS. This claim is, therefore, barred by the Eleventh Amendment.

The Eleventh Amendment also bars suits against state officials for declaratory relief for past unlawful conduct where there is no continuing violation and thus no need for injunctive relief. *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). Plaintiffs argue that in this case there is a continuing violation of their rights because the DSS still has plaintiffs' records on file. Although plaintiffs' post-hearing memorandum states that they are seeking injunctive relief in the form of the closing and expungement of their file, plaintiffs did not request injunctive relief in their Second Amended Complaint. Therefore, plaintiffs may promptly move to amend their Second Amended Complaint to add a prayer for injunctive relief. Otherwise the claim against Matava in her official capacity must be dismissed.

The Eleventh Amendment does not bar claims for damages against officials in their individual capacities. *Edelman*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Massachusetts law provides for possible indemnification of Matava if she is held individually liable for damages in this case. Mass.Gen. Laws c. 58, §§ 2, 9. The state does not, however, extend its Eleventh Amendment immunity to officials acting in their individual capacities by voluntarily passing employee indemnification statutes which arguably make the state the "real, substantial party in interest." *See, e.g., Demery v. Kupperman*, 735 F.2d 1139, 1146–49 (9th Cir.1984), *cert. denied sub nom., Rowland v. Demery*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); *Spruytte v. Walters*, 753 F.2d 498, 512 n. 6 (6th Cir.1985); *Davis v. Harris*, 570 F.Supp. 1136, 1138 (D.Ore.1983); *Palmer v. Penn-Ohio Road Materials, Inc.*, 470 F.Supp. 1199, 1203 (W.D.Pa.1979); L. Tribe, *American Constitutional Law* 132–33 n. 22 (1978). Matava is, therefore, not

protected by the Eleventh Amendment from a claim for damages against her in her individual capacity by virtue of the indemnification provisions of Massachusetts law.

## B. QUALIFIED AND ABSOLUTE IMMUNITY

### 1. *Plaintiffs' Motion for Preliminary Discovery*

█ Each of the individual defendants, including Matava, has raised a qualified immunity defense to plaintiffs' damages claims against them in their personal capacities. In addition, the individual defendants claim they are entitled to absolute immunity with regard to the claims for damages relating to substantiation of the second child abuse report. As stated previously, plaintiffs did not initially file a memorandum in opposition to defendants' motions to dismiss or for summary judgment. Instead, plaintiffs initially filed a motion to extend the time for filing their memorandum in opposition until they had the opportunity to conduct discovery concerning the qualified immunity defense, as well as on other issues raised in defendants' motions.

Plaintiffs' request for preliminary discovery on the qualified immunity issue must be denied. As the controlling Supreme Court case on qualified immunity, *Harlow v. Fitzgerald*, states, "[u]ntil [the] threshold immunity question is resolved, discovery should not be allowed." 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This rule is intended, in part, to "avoid excessive disruption of government ..." *Id.*

The Court of Appeals for the First Circuit has indicated that preliminary discovery relating to qualified immunity may be appropriate under certain circumstances, namely, where the plaintiff can present persuasive evidence that in spite of the fact that a reasonable person would not have known that his actions would violate plaintiff's constitutional rights, a particular defendant *did* know. *Krohn v. United States*, 742 F.2d 24, 31 (1st Cir.1984). In this case, however, plaintiffs have not alleged that defendants had special, personal knowledge that their alleged misconduct violated federal law. Nor have plaintiffs raised other factual questions that must be resolved before the qualified immunity issue can properly be decided. Therefore, discovery is not necessary or appropriate concerning the questions presented regarding qualified immunity. As discussed later, discovery may be required to resolve issues in this case which are not decided today.

### 2. *Merits of the Immunity Defenses for Individual Defendants*

As explained below, defendants are entitled to qualified immunity with regard to the claims alleging unreasonable entry into plaintiffs' home and coercion of counseling. Defendants are entitled to absolute immunity with regard to the claim arising out of the substantiation of the second child abuse report.

There are several important principles relating to qualified immunity that are relevant to this case. They include the following.

42 U.S.C. § 1983 generally provides a damage remedy for violation of *federal* statutory or constitutional rights. Public officials are, however, in certain circumstances entitled to qualified immunity from § 1983 actions because:

> [T]he public interest requires decision and action.... Public officials ... who fail to make decisions when they are needed or who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their offices. Implicit in the idea that officials have some immunity ... is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error than not to decide or act at all.

*Scheuer v. Rhodes*, 416 U.S. 232, 241–42, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974).

The guiding principle that this court must apply in deciding whether defendants in this case are entitled to qualified immu-

nity was stated in *Harlow*, in which the Supreme Court held that:

> [G]overnment officials performing discretionary functions, generally are shielded from liability for ~ivil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818, 102 S.Ct. at 2738. In *Harlow*, the Supreme Court further stated that:

> If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful....
>
> If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Id.* at 818–19, 102 S.Ct. at 2738.

The Court of Appeals for the First Circuit has recently addressed what is meant by "clearly established" and found:

> it to be something less than requiring the public official to show that the principle of law did not exist, or there would be little left; there would be few cases on which officials could succeed. Only rarely do legislatures or courts introduce or change whole principles. More often, the process of change involves a sharpening of lines in the law's grey areas, absent which there could reasonably be excusable mistakes.

*De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1190 (1st Cir.1986).

■ Thus, if the incorrectness of a defendant's alleged conduct under federal law was not clearly established and, therefore, a reasonable person in defendant's position could have believed such conduct to be warranted, the defendant is entitled to qualified immunity. *Id.* at 1191 and 1193. As Chief Judge Campbell of the First Circuit has noted, questions of qualified immunity turn on the clarity of *federal* law, rather than on whether the conduct in question was clearly proscribed by state law. *Id.* at 1195 (Campbell, C.J., concurring).

Application of these principles to plaintiffs' claims concerning the entry into their home and the efforts to cause them to participate in family counseling indicates that defendants have qualified immunity with regard to these claims. Assuming plaintiffs' allegation to be true,[1] it was not at the times relevant to this case clearly established that defendants' alleged conduct violated the United States Constitution.[2] Indeed, it remains uncertain whether defendants' alleged conduct did, in fact, violate the United States Constitution.

### (a) *The Entry Into Plaintiffs' Home*

■ Plaintiffs contend that defendants Bronson and Focht coercively entered their home without a warrant or their consent, thus violating plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures. Defendants argue that even if plaintiffs' allegations are accurate, Bronson and Focht did not violate clearly established constitutional rights by entering plaintiffs' home without a warrant, and that they are thus entitled to qualified immunity. For the reasons stated below, defendants are correct.

Plaintiffs' Fourth Amendment rights against the visit by Bronson and Focht were not in 1983, and still are not, clearly established. Plaintiffs do have a Fourth Amendment right to be free from unreasonable administrative searches. *Michigan v. Clifford,* 464 U.S. 287, 104 S.Ct. 641,

---

**1.** When deciding a motion to dismiss, the court must accept the claims alleged in the complaint as true. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam). The court must view the facts in the light most favorable to the plaintiff and only dismiss the complaint if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [him] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80; *Harper v. Cserr,* 544 F.2d 1121, 1122 (1st Cir.1976).

**2.** There are no federal statutory rights at issue in this case.

78 L.Ed.2d 477 (1984). However, there is a substantial question whether warrantless home visits by social workers investigating claims of child abuse violate the Fourth Amendment. *See Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) (no constitutional violation where social worker made warrantless home visit to recipient of Aid to Families with Dependent Children pursuant to state welfare laws); *E.Z. v. Coler*, 603 F.Supp. 1546, 1555–60 (N.D.Ill.1985) (no constitutional violation where social worker investigating child abuse report made warrantless home visit without informing parents of right to refuse entry and asserted statutory authority to enter home); *Darryl H. v. Coler*, 585 F.Supp. 383 (N.D.Ill.1984) (no constitutional violation where social worker investigating child abuse report entered home, despite plaintiffs' claims that their consent was coerced).

Plaintiffs rely upon a 1986 decision of the Massachusetts Supreme Judicial Court to argue that the DSS has long been aware of the rights of families to be free from nonemergency, investigatory searches of their homes without consent or court order. *Parents of Two Minors v. Bristol Division of the Juvenile Court Department*, 397 Mass. 846, 494 N.E.2d 1306 (1986). In *Parents of Two Minors*, however, the Supreme Judicial Court declined to decide whether parents have a *federal* constitutional right to be free from nonemergency home visits by employees of the DSS investigating anonymous reports of child abuse. 397 Mass. at 848, 494 N.Ed.2d 1306. Rather, in that case the Supreme Judicial Court expressly limited its holding to the statement that a Juvenile Court judge did not have the authority to order plaintiffs to submit to such a visit and did not reach the federal constitutional issues argued by the parties. *Id.*

As indicated earlier, it would not be sufficient to show that defendants should have known their conduct was impermissible as a matter of state law. Rather, to invalidate defendants' qualified immunity defense plaintiffs must prove both that the federal law was at the relevant time clearly established, and that the federal law pro-

scribed the conduct alleged. *De Abadia*, 792 F.2d at 1195 (Campbell, C.J., concurring). Thus, the 1986 decision in *Parents of Two Minors* does not suggest that plaintiffs' asserted Fourth Amendment rights against the visit by Bronson and Focht were clearly established in 1983. If anything, the decision reinforces the view that this question remains, at best, undecided.

The Supreme Court has recently reiterated that where a legitimate question arises over the constitutionality of a warrantless search, the court may not find that the search violated clearly established constitutional rights. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985). As discussed above, *Wyman, E.Z. v. Coler*, and *Darryl H.* demonstrate that there was, and remains, a substantial question whether warrantless home visits by social workers investigating claims of child abuse violate the Fourth Amendment. Thus, federal law did not in 1983 clearly establish that Bronson and Focht's alleged conduct in gaining entry to plaintiffs' home was impermissible. Defendants are, therefore, entitled to qualified immunity concerning this claim.

#### (b) *The Coerced Counseling Claim*

■ In their Second Amended Complaint plaintiffs allege that in late 1984 defendants Mancusi, Focht, and Rabinovitch, acting under the supervision of defendants Hill, Bronson, and Matava, violated their First and Fourteenth Amendment rights by threatening to institute proceedings to revoke their parental rights if plaintiffs refused to attend family counseling sessions. Defendants again assert that there is qualified immunity for the conduct alleged. Once again, the court agrees.

Plaintiffs did at all relevant times have a clearly established right to be free from unwarranted governmental instrusion into their family affairs, which was protected by the due process provisions of the Fourteenth Amendment. *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Stanley v. Illinois*, 405

U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The existence of a clearly established right to family privacy is not the end of the necessary inquiry, however. The second essential question is whether it was clearly established in 1983 that threatening suit to revoke parental rights in order to influence plaintiffs to attend family counseling would violate plaintiffs' constitutional right to family privacy.

For the reasons described below, defendants had absolute immunity with regard to the decision to substantiate the second child abuse report. Mass.Gen. Laws c. 119, § 51B(5) requires that social services be offered to a family when there is reasonable cause to believe a report of child abuse is accurate. If the family declines those services, § 51B(5) allows the state to initiate court proceedings which could result in removal of the child from the parents.[3] Plaintiffs allege, in essence, that defendants in graphic and menacing fashion informed plaintiffs that the litigation authorized by Massachusetts law would be initiated and pursued if plaintiffs did not accept the counseling services which defendants had, as required by law, offered plaintiffs.[4] Plaintiffs argue that such threats violated their clearly established constitutional rights.

The principal cases upon which plaintiffs rely, however, do not indicate that their claimed constitutional right to be free of threats such as those alleged in this case was clearly established during the period relevant to this case. In *Sims v. State Department of Public Welfare*, 438 F.Supp. 1179 (S.D.Tex.1977), *rev'd on other grounds sub nom., Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), a district court in Texas decided that, with regard to the constitutional guarantee of due process:

> Psychological or psychiatric examinations represent such an intrusion into the privacy of the family that, if objected to, *should not be ordered without some type of adversary hearing before a judicial body.*

438 F.Supp. at 1191. (Emphasis added). In this case, however, plaintiffs do not contend they did not have or did not know that they had a right to an adversary hearing if they declined counseling. Thus, even accepting for present purposes that the decision in *Sims* represented a reliable state-

---

3. Mass.Gen. Laws c. 119, § 51B(5) provides in pertinent part that the DSS shall:

    (5) offer to the family of any child which it has reasonable cause to believe is suffering from any of the conditions described in the report appropriate social services to prevent further injury to the child, to safeguard his welfare, and to preserve and stabilize family life whenever possible. If the family declines or is unable to accept or to participate in the offered services, the department, or any person may file a petition pursuant to section twenty-four requesting an appropriate order with reference to the care and protection of the child.

4. Paragraph 21 of the Second Amended Complaint states:

    In the weeks following the substantiation letter, the Ms received numerous harassing and threatening telephone calls from defendants Mancusi, Focht, and Rabinovitch, acting under the supervision of defendants Marybeth Bronson and Deborah A. Hill. The Ms were forced to attend "counseling" sessions: Donald with defendant Rabinovitch and Annette with defendant Focht. Defendant Rabinovitch told Mr. M that DSS could spend $300,-000–$400,000 in court to deprive him of the custody of his children; and would litigate him into the street if he did not cooperate. She further told Mr. M that he was too defiant, not submissive enough, and that he would "learn to obey us," or words to that effect. Defendant Focht continued to threaten and coerce Annette M, telling her, when she sought to discontinue her visits, "we'll go to court" to take the children away if Annette M did not come back, or words to that effect.

    Paragraph 4 of the September 28, 1985 Affidavit of Plaintiff Donald M similarly states:

    After I received defendant Mancusi's substantiation letter of November 23, 1983, I had numerous conversations with defendant Mimi Rabinovitch in which she threatened to go to court to take away custody of my children if I did not cooperate with the D.S.S. and attend counselling sessions. On one occasion she told me that if I did not cooperate and attend counselling sessions she would litigate me "into the street", and that she could spend $300,000 or $400,000 of the Commonwealth's money to do so.

ment of the relevant law, it does not indicate that it was clearly established that the conduct in this case was, during the relevant period, proscribed by the United States Constitution.

Similarly, and more importantly, neither the 1977 decision of the United States District Court for the District of Massachusetts in *Rogers v. Okins* nor the subsequent decisions relating to that case clearly established, during the relevant period, that defendants' alleged conduct violated the United States Constitution. 478 F.Supp. 1342 (D.Mass.1979), *aff'd in part, rev'd in part and remanded*, 634 F.2d 650 (1st Cir.1980), *vacated and remanded sub nom., Mills v. Rogers*, 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982), *certified questions answered sub nom., Rogers v. Commissioner of Mental Health*, 390 Mass. 489, 458 N.E.2d 308 (1983), *remanded, Rogers v. Okin*, 738 F.2d 1 (1st Cir. 1984). The *Rogers* cases involved the issue of whether a committed, mentally ill patient could, without a judicial proceeding, be forced to take mind-altering drugs in a non-emergency situation. In 1977, the district court decided that the United States Constitution prohibited this. *Rogers v. Okin*, 478 F.Supp. at 1365–71. After receiving certified questions from the First Circuit, in November, 1983, the Massachusetts Supreme Judicial Court decided that Massachusetts law established the right of committed, mentally ill patients to prior court approval before they could be forcibly injected with anti-psychotic drugs. *Rogers v. Commissioner*, 390 Mass. at 510–11, 458 N.E.2d 308. In June, 1984, the First Circuit decided that the Supreme Judicial Court's opinion in *Rogers* indicated that Massachusetts law established that committed mentally ill patients have a right to refuse antipsychotic medication, that this right is protected by the due process clause of the Fourteenth Amendment, and that the judicial proceedings required by Massachusetts law equal or exceed the due process required by the United States Constitution.

The *Rogers* cases differ from the instant case in material respects. The facts and concerns of the *Rogers* cases and the instant case are sufficiently different to justify a reasonable social worker's belief that the *Rogers* cases did not make the implementation of § 51B(5) illegal as a matter of federal law. For example, the *Rogers* decisions prohibited forced drug therapy without prior judicial approval. In this case, however, the allegations indicate that plaintiffs knew that they could decline counseling and litigate the issue of whether they would have to accept counseling, among other issues, if they wished. In addition, the First Circuit did not decide that federal law protected the rights at issue in *Rogers* until June 1984, after the conduct alleged by plaintiffs had occurred.

Plaintiffs contend, and the court agrees, that a precise factual correspondence is not always needed between the case at hand and the precedents in order to find that a defendant's actions violated clearly established constitutional rights. *See, e.g., Blackburn v. Snow*, 771 F.2d 556, 569 (1st Cir.1985) (although no Supreme Court or court of appeals case with precise factual correspondence, strip searches of prison visitors violate clearly established Fourth Amendment rights if conducted without particularized suspicion that person searched is engaging in wrongdoing); *King v. Higgins*, 702 F.2d 18, 19–21 (1st Cir.), *cert. denied sub nom., Vinzant v. King*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983) (prisoner's due process right to disciplinary hearing clearly established even before leading case, *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), decided). As indicated earlier, however, the Supreme Court has recently stated that where a legitimate question arises over the constitutionality of alleged conduct, the court may not find that such conduct violated clearly established constitutional rights. *Mitchell*, 472 U.S. 511, 105 S.Ct. at 2820 n. 12 (1985).

Although the merits of the question need not be decided now, there was in 1983, and there remains, a legitimate question whether a good faith threat of litigation in the context of this case would constitute improper coercion and, if so, whether such coercion would violate federal law. For

example, in the context of searches and seizures it has been held that a good faith assertion by a police officer that he would seek a warrant if the suspect did not consent to a search did not make the suspect's subsequent consent involuntary. *United States v. Miller*, 589 F.2d 1117, 1132 n. 13 (1st Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979); *see also United States v. Vasquez*, 638 F.2d 507, 528–29 (2d Cir.1980), *cert. denied sub nom., Mesa v. United States*, 450 U.S. 970, 101 S.Ct 1470, 67 L.Ed.2d 620, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135, and *Vasquez v. United States*, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981) ("'the well-founded advice of a law enforcement officer that, absent consent to search, a warrant can be obtained does not constitute coercion'"). The claims of coercion in this case may or may not be analogous to those in the foregoing search and seizure cases. The contentions in this case do, however, present a legitimate question of whether the conduct alleged constituted coercion and, if so, whether such coercion was constitutionally impermissible.

In sum, while the language defendants allegedly used, if proven, might be condemned by the court, and the issue of whether their alleged conduct violated the United States Constitution remains to be decided, the incorrectness of such conduct as a matter of federal law was not clearly established in 1983. In 1983, reasonable people in defendants' positions would have been warranted in believing that in threatening to employ energetically the authority to litigate provided by Massachusetts law, they were not violating federal law. Thus, defendants are entitled to qualified immunity with regard to plaintiffs' coerced counseling claim.

#### (c) *The Decision to Substantiate the Child Abuse Report*

■ Plaintiffs allege that defendant Mancusi violated their constitutionally pro-

tected right of family privacy and integrity by substantiating the second child abuse report without any evidence of misconduct by plaintiffs. This report had the effect of infringing their right to family privacy, plaintiffs assert, because it provided the basis for the alleged coerced counseling, created the threat of losing their children, and generated the label of "child abuser" and its associated stigma. Defendant Mancusi argues, however, that he is absolutely immune from personal liability for his decision to substantiate the second child abuse report.[5] This contention is correct.

In *Malachowski v. City of Keene*, the First Circuit recently held that a police officer was absolutely immune from personal liability for filing an allegedly false petition to initiate juvenile delinquency proceedings. 787 F.2d 704 (1st Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986). The court explained:

> Sergeant Brown's initiation of juvenile delinquency proceedings in his capacity as a juvenile officer of the Keene Police Department cannot form the basis of § 1983 damages liability. Sergeant Brown's filing of the petition against Amy was not an "investigative" activity, but rather an activity "intimately associated with the judicial phase of the criminal process ... to which the reasons for absolute immunity apply with full force." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976).
>
> [A] juvenile officer, such as Sergeant Brown, must be free from the threat of harassment and intimidation in his decision to initiate juvenile delinquency proceedings.

*Malachowski*, 787 F.2d at 712.

The *Malachowski* court cited with approval several other cases that apply absolute immunity to the initiation of juvenile proceedings. In *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984), the Sixth Circuit held that state employees respon-

---

**5.** Mancusi also argues that he did, in fact, have evidence substantiating the child abuse report, namely, the statements concerning Mr. M's violence reportedly made by Mrs. M to a day care center worker. Mancusi also argues that par-

ents have no right against substantiation of a child abuse claim and that even if such a right exists, it is not clearly established. The court need not now reach the merits of these defenses.

sible for initiating child neglect and delinquency petitions, including state psychologists whose findings were used by the juvenile court, were entitled to absolute immunity for actions taken within the scope of their employment. In *Whelehan v. County of Monroe,* 558 F.Supp. 1093 (W.D.N.Y. 1983), social service workers were deemed to be absolutely immune for activities determining when to bring termination proceedings. *Id.* at 1097–1102. The *Malachowski* court also cited, among others, *Pepper v. Alexander,* 599 F.Supp. 523 (D.N.Mex.1984), where a district court held that social service workers were entitled to absolute immunity from damage liability for their decisions to apply for the termination of parental rights and for their participation in termination proceedings. *Id.* at 526–27.

This court finds that defendant Mancusi and any supervisory officials allegedly responsible for his actions are absolutely immune from liability for substantiating the second child abuse report. While some cases have found social workers not absolutely immune for initiating child neglect and abuse proceedings, *see, e.g., Doe v. County of Suffolk,* 494 F.Supp. 179, 181–183 (E.D.N.Y.1980); *Doe v. Hennepin County,* Civ. No. 4–84–115 (D.Minn. June 26, 1984), the holding in *Malachowski* indicates that the First Circuit approves of the decisions in *Kurzawa, Whelehan,* and *Pepper,* all of which grant absolute immunity to social service workers acting to initiate child abuse proceedings. The decision here to substantiate the second child abuse report—in contrast to the steps taken to obtain the information on which the decision was based—did not have an investigatory purpose. Rather, the determination that there was reasonable cause to believe child abuse had occurred was a step in the process of possibly initiating formal proceedings against the Ms. *See* Mass.Gen. Laws c. 119, § 51B(5). As such, it was intimately associated with the judicial phase of the legal process and, therefore, protected by absolute immunity. *Malachowski,* 787 F.2d at 712.[6] Thus, whether or not they had sufficient evidence for doing so, Mancusi and his supervisors are absolutely immune from liability for substantiation of the second child abuse report.

## III.  CONCLUSION

In view of the foregoing, it is hereby ORDERED that:

1. The claims for damages against defendant Matava in her official capacity are DISMISSED. Plaintiffs may, however, move to amend their complaint to request appropriate injunctive relief against Matava in her official capacity.

2. The damage claims against the defendants, other than MGH, for the alleged unconstitutional entry into plaintiffs' home, for the alleged coercion of plaintiffs to accept family counseling, and for the alleged unwarranted substantiation of the second child abuse report are DISMISSED.

---

**6.** This conclusion is not altered because legal proceedings were not actually instituted. Massachusetts law requires the DSS to offer appropriate services to ameliorate family situations before the DSS may institute legal proceedings. Mass.Gen. Laws. c. 119, § 51B(5). When a child abuse report is substantiated, it is not foreseeable whether litigation will prove to be necessary. It would be anomalous and inappropriate for federal law to afford absolute immunity for substantiating a child abuse report if litigation results, but not if efforts to resolve the matter short of litigation succeed. Such a distinction would give public officials an incentive to initiate unnecessary proceedings to enlarge their immunity. This would, among other things, be clearly contrary to the policy reflected in Massachusetts law of encouraging mutually agreeable resolutions to delicate child care problems prior to litigation.