Department of Mental Retardation *vs.* Dorrie E.
Kendrew & another.[1]

Suffolk. January 3, 1994. - June 7, 1994.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & O'Connor, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Department
of Mental Retardation. Mental Health. District Court,* Jurisdiction.

A petition under G. L. c. 211, § 3, was the appropriate means for the
Department of Mental Retardation to seek relief from an order of a
District Court judge, entered in a criminal case to which the depart-
ment was not a party, requiring the department to place the defendant
in a long-term residential program. [52-53]

In the circumstances of a criminal proceeding, a District Court judge had
no statutory or other inherent authority to order the Department of
Mental Retardation, which was not a party to the proceeding, to place
the defendant in a long-term residential program, where the defendant
(who was mentally retarded) was not mentally ill. [53-57]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on August 25, 1993.

The case was heard by *Nolan,* J.

*Amy Spector,* Assistant Attorney General, for the
plaintiff.

*Lewis S. Victor* for Dorrie E. Kendrew.

LIACOS, C.J. The Department of Mental Retardation (de-
partment) appeals from an order of a single justice of this
court denying its petition for relief pursuant to G. L. c. 211,
§ 3 (1992 ed.). The major issue presented on appeal is
whether, in the course of a criminal proceeding, a judge of
the District Court may order the department to provide ser-

---

[1]The Brockton Division of the District Court Department of the Trial
Court, as a nominal party.

vices to the defendant. We conclude that a District Court judge may not do so, and therefore we reverse.

On June 18, 1993, the defendant, Dorrie E. Kendrew, was charged with assault and battery on a police officer and malicious injury to personal property. On that date, a judge of the District Court had a court psychologist examine Kendrew. See G. L. c. 123, § 15 (*a*) (1992 ed.). On the recommendation of the psychologist, the judge committed Kendrew to the Taunton secure care unit (unit) for observation pursuant to G. L. c. 123, § 15 (*b*) (1992 ed.).

Dr. Sylvia Patino Brandfon, a forensic psychologist at the unit, prepared a report dated July 26, 1993, detailing her observations and opinions regarding Kendrew. In the report, Dr. Brandfon wrote that Kendrew was mildly mentally retarded, had an impulse disorder with aggressive behavior, and showed adult antisocial behavior. Dr. Brandfon recommended that Kendrew be found not competent to stand trial. The psychologist further explained that, because Kendrew does not have a mental illness, she does not represent a risk of harm to herself or others because of mental illness, but that she represents a risk of harm to herself and others because of her impulsive, physically aggressive, and self-destructive behavior. Dr. Brandfon was of the opinion that Kendrew needed a "structured, consistent, residential program that is staffed 24 hours a day and *from which she cannot leave*," and that the unit was no longer an appropriate setting for Kendrew (emphasis in original).

On July 28, 1993, Kendrew appeared in court and was then returned to the unit pending a further hearing on August 10, 1993. The court summonsed Kendrew's department case workers to appear in court on August 10. On that date, the court ordered "the [department] to take custody of Dorrie E. Kendrew on August 24, 1993, and place her into a long term residential program which will provide for her safety and that of the community." On August 16, 1993, the department filed a motion to reconsider and vacate the order of August 10, or, in the alternative, to stay that order so that the department could have an opportunity to consider further

action. This motion was denied. The department took custody of Kendrew and placed her in "temporary emergency housing in a home care placement."

The department then filed this petition for G. L. c. 211, § 3, relief. After hearing, a single justice denied the petition. The department filed a renewed motion for reconsideration or a stay in the District Court, which also was denied. The department then filed a notice of appeal from the order of the single justice to the full court and a motion for a stay pending appeal. The single justice denied the motion for a stay. We granted the department's subsequent motion to the full court for a stay pending appeal. We now reverse the order of the single justice.

The department argues that the single justice erred in denying the relief requested under G. L. c. 211, § 3. Kendrew responds that the single justice acted within his discretion in denying relief to the department. We first discuss whether a petition under G. L. c. 211, § 3, invoking this court's general superintendence power over all inferior courts of the Commonwealth, was an appropriate means for the department to seek relief.

The relevant provision of G. L. c. 211, § 3, provides that "[t]he supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein *if no other remedy is expressly provided*" (emphasis supplied). We exercise our superintendence power sparingly. *School Comm. of Worcester* v. *Worcester Div. of the Juvenile Court Dep't*, 410 Mass. 831, 834 (1991); *Parents of Two Minors* v. *Bristol Div. of the Juvenile Court Dep't*, 397 Mass. 846, 849 (1986).

In the circumstances of this case, the department appropriately proceeded under G. L. c. 211, § 3. The department was not a party to the criminal action, but merely had been summonsed by the District Court judge to appear at a pretrial hearing. After the order of August 10 was issued, the department moved for reconsideration of that order, or for a stay. Both requests were denied after a hearing on August 24, 1993. The department later renewed these requests and they

again were denied by the District Court judge. Kendrew does
not suggest any other route by which the department might
have sought relief from the order of August 10, nor do we
perceive any. Therefore, we conclude that the department
appropriately sought relief under G. L. c. 211, § 3.[2] See
*School Comm. of Worcester, supra* at 833-834.

We consider whether the single justice erred in denying
the department's petition for relief from the order of August
10 of the District Court judge. We shall reverse a decision of
a single justice only when there is clear error of law or an
abuse of discretion. *Delisle* v. *Commonwealth*, 416 Mass.
359, 360 (1993). *Rogan* v. *Commonwealth*, 415 Mass. 376,
378 (1993).

The Legislature created the Department of Mental Retar-
dation in 1986. G. L. c. 19B, inserted by St. 1986, c. 599,
§ 9. The department was charged with "tak[ing] cognizance
of all matters affecting the welfare of the mentally retarded
citizens of the commonwealth." G. L. c. 19B, § 1. The Leg-
islature also enacted a statutory scheme dealing generally
with the department's responsibilities to its clients. G. L. c.
123B, inserted by St. 1986, c. 599, § 39.

Prior to the legislation creating the department, the func-
tions now performed by the department were performed by
the Department of Mental Health. G. L. c. 19, as appearing

---

[2]The defendant suggests that the department's petition for relief is moot
because the department has placed the defendant in a program which
meets the mandate of the District Court order. The department counters
that Kendrew's current placement is only temporary and does not satisfy
the court's order to place Kendrew in a "long term residential program."
Thus, the department says that it is not in compliance with the court or-
der. We note that if, pursuant to the court order, the department at some
point places Kendrew in a long-term residential program and then later
determines that Kendrew no longer requires such services, the department
would have to return to court and obtain leave of the court to change Ken-
drew's placement. Additionally, even if we assume that the department
currently is in compliance with the court order, the existence of the order
places a future burden on the department which is not otherwise imposed
by statutes and regulations. See G. L. c. 123B (1992 ed.); 104 Code Mass.
Regs. §§ 20.00-23.27 (1986). We conclude that the department's petition
is not moot.

in St. 1966, Ex. Sess., c. 735, § 1. G. L. c. 123 (1986 ed.). At that time, a person could be involuntarily committed to a facility, for purposes other than observation or examination, only if that person suffered from mental illness. See G. L. c. 123, §§ 7 (*a*), 7 (*b*), 8 (*a*), 8 (*b*), 8A (*a*), 12 (*a*), 12 (*e*), 13, 16 (*c*) (1986 ed.).[3] Otherwise, admission to a facility was on a voluntarily basis. See G. L. c. 123, §§ 11-12 (1986 ed.). After the creation of the department, these provisions remain substantially unchanged. See G. L. c. 123, §§ 7 (*a*), 7 (*b*), 8 (*a*), (*b*), 10, 11, 12 (*a*), 12 (*e*), 13, 16 (*c*) (1992 ed.); G. L. c. 123B, §§ 6, 7 (1992 ed.).

We observe that a District Court judge presiding over a criminal proceeding had, and continues to have, the authority to order the observation and examination of any defendant in the circumstances described in G. L. c. 123, § 15 (*a*). In addition, the several statutes mentioned above authorize a District Court judge to order the involuntary commitment of a mentally ill person in appropriate circumstances. There is no statutory authority, however, for a District Court judge to order the commitment of a mentally retarded person who is not also mentally ill, even when that person poses a threat of harm to himself or herself, or others.

In this case, the District Court judge ordered the department to "take custody of Dorrie E. Kendrew on August 24, 1993, and place her into a long term residential program which will provide for her safety and that of the community." We need not decide whether this order constitutes an order of involuntary commitment of Kendrew,[4] because, as discussed below, the District Court judge had no authority to order, in the course of a criminal proceeding, the department to place Kendrew in a long-term residential program.

_____

[3]A mentally retarded person may be, but is not necessarily, mentally ill. G. L. c. 123, § 1 (1986 ed.). G. L. 123B, § 1 (1992 ed.). In this case, the record indicates that Kendrew was not mentally ill.

[4]As previously noted, Kendrew is mildly mentally retarded, but not mentally ill. The District Court judge also found that Kendrew "is very likely to resume manipulative suicidal behavior and very likely to continue to show physically aggressive behavior towards others."

We recognize that the courts of the Commonwealth have certain inherent and implied powers in addition to those powers expressly enumerated in various statutes. *School Comm. of Worcester* v. *Worcester Div. of the Juvenile Court Dep't*, 410 Mass. 831, 834-835 (1991). *Brach* v. *Chief Justice of the Dist. Court Dep't*, 386 Mass. 528, 535-536 (1982), quoting *Sheriff of Middlesex County* v. *Commissioner of Correction*, 383 Mass. 631, 636 (1981). *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 662-664 (1978). *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 509-510 (1972). These powers generally are categorized as "necessary and inevitable implication[s]" of the powers of courts expressed in our Constitution and statutes, or as "ancillary functions, such as rulemaking and judicial administration, which are essential if the courts are to carry out their constitutional mandate." *Police Comm'r of Boston, supra* at 663, 664. See *Brach, supra* at 535-536. "The primary purpose of recognizing ancillary jurisdiction is to ensure that a particular court judgment is given complete and final effect." *Police Comm'r of Boston, supra* at 664.

The matter pending before the District Court judge was a criminal matter in which the judge's function was to decide the criminal charges and impose a penalty if necessary. Those functions were impeded only because the judge found that Kendrew was incompetent to stand trial. Since Kendrew was not mentally ill, the judge could not order her commitment under G. L. c. 123, § 16 (*c*). Under the existing statutory scheme, as one of the participants noted, Kendrew "had fallen through the cracks."

We have no doubt that the District Court judge acted humanely in what he believed was Kendrew's best interest and, perhaps, that of the people of the Commonwealth when he ordered the department to place her in a long-term residential program. The difficulty we see is that the legislative "gap" or "crack" was not within a court's power to fill. We cannot say, however, that the order was authorized by a necessary and inevitable implication of the court's power to de-

cide criminal cases and impose penalties, or that the order was an ancillary function in the nature of rule-making or judicial administration. Finally, since there was no judgment in the criminal case, the order does not ensure that the judgment was given complete and final effect. Thus, we conclude reluctantly that the District Court judge was without authority to issue the order to the department in that proceeding.

A court of competent jurisdiction may review, in an appropriate case, the provision of services, or the denial of services, by the department to a client. See *Matter of McKnight*, 406 Mass. 787, 798 (1990). In such a case, the department should be a party. See *id.* at 789. In this criminal proceeding, however, the department was not a party but instead had been summonsed to appear in court.[5] In a similar procedural setting, we concluded that a Juvenile Court judge could not rule on the constitutionality of a school committee policy and order the school committee (not a party) to reinstate an expelled juvenile to the public schools. *School Comm. of Worcester* v. *Worcester Div. of the Juvenile Court Dep't*, 410 Mass. 831, 832, 836 (1991). While we alluded to the fact that the school committee was not a party to a juvenile proceding under G. L. c. 119, §§ 39E-39I (CHINS), *id.* at 834, we concluded on separate grounds that the Juvenile Court had no statutory or inherent powers in equity or otherwise to issue such orders. *Id.* at 836-837. See *Parents of Two Minors* v. *Bristol Div. of the Juvenile Court Dep't*, 397 Mass. 846, 852-853 (1986). See also *Williams* v. *Secretary of the Executive Office of Human Servs.*, 414 Mass. 551, 570 (1993).

It appears from the record that the department already was providing some level of services to Kendrew, or, at the very least, had taken cognizance of her. It is possible that the department was not providing to Kendrew the services to which she may have been entitled by the department's regu-

---

[5]We are not persuaded by Kendrew's suggestion, advanced without citation of authority, that the department was an "ancillary party" to the criminal action.

lations or otherwise: implicit in the District Court judge's order was a finding that the department was not doing enough for Kendrew at that time. That issue, however, is the subject of a separate proceeding and not one that the District Court judge had the authority to address in the pending criminal matter.

Since the District Court judge had no authority in these circumstances to issue the order to the department to place Kendrew in a long-term residential program, the single justice erred in refusing to grant the relief requested by the department. Accordingly, the order of the single justice denying the department's petition under G. L. c. 211, § 3, is reversed. The case is remanded to the county court where an order shall issue vacating the order of the District Court dated August 10, 1993.

*So ordered.*