NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12084


COMMONWEALTH  vs.  DONALD CALVAIRE.



Suffolk.    October 6, 2016. - January 11, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.



Incompetent Person, Criminal charges.  Practice, Criminal,
     Sentence, Dismissal, Competency to stand trial.
     Constitutional Law, Equal protection of laws.  Due Process
     of Law, Substantive rights.




Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on January 29, 2016.

The case was reported by Cordy, J.


M. Barusch, Committee for Public Counsel Services (Beth L.
Eisenberg also present) for the defendant.
Darcy A. Jordan, Assistant District Attorney, for the
Commonwealth.


BUDD, J.  Under G. L. c. 123, § 16 (f) (§ 16 [f]), a

defendant who is found incompetent to stand trial is entitled to

dismissal of the criminal charges against him or her at the

point corresponding to one-half the maximum sentence the

defendant could have received if convicted of the most serious crime with which he or she was charged. We consider in this case how to calculate the date of dismissal when the most serious crime is within the concurrent jurisdiction of both the Superior Court Department and the District Court or Boston Municipal Court (BMC) Department, but the case is pending in the BMC. We conclude that the basis for the calculation is the maximum sentence provided for in the statute, regardless of the court in which the charges are pending at the time of the calculation. We also conclude that in this case, pursuant to § 16 (f), dismissal of the charge before the computed date may nevertheless be appropriate in the interest of justice.

Background. On July 3, 2012, a woman was stabbed with a pocket knife at the Ashmont station of the Massachusetts Bay Transportation Authority in the Dorchester section of Boston. Two days later, the BMC issued a criminal complaint charging the defendant, who has a history of mental illness, with assault and battery by means of a dangerous weapon in violation of G. L. c. 265, § 15A (b). He has been in custody ever since, spending most of that time committed at Bridgewater State Hospital (Bridgewater).[1] Since the complaint issued, the defendant has

---

[1] The defendant was first sent to Bridgewater State Hospital (Bridgewater) on December 17, 2012, for a competency evaluation pursuant to G. L. c. 123, § 15. On March 6, 2013, he was transferred from Bridgewater to the Nashua Street jail. On

been competent to stand trial only intermittently.[2] The Commonwealth made attempts to proceed to trial in the BMC during the periods in which the defendant was competent, but each time the scheduled date approached, the trial was continued or else the defendant was found to be incompetent.[3]

In 2014 and 2015, the defendant moved on three separate occasions in the BMC to dismiss the charge pursuant to § 16 (f). Each of the motions was denied. In January, 2016, the defendant again sought dismissal of the charge under § 16 (f). The judge denied the defendant's motion.[4] The defendant subsequently filed a petition for relief under G. L. c. 211, § 3, in the county

May 17, 2013, he was returned to Bridgewater and has been civilly committed there ever since, held variously under G. L. c. 123, § 18 (a), for care and treatment, and G. L. c. 123, § 16 (b) and (c), for civil commitment of a criminal defendant. The order authorizing the defendant's current commitment expires on June 13, 2017.

[2] Based upon the record, the periods that the defendant apparently was competent to stand trial were from July 5, 2012, to December 17, 2012, and from March 12, 2013, through March 21, 2014.

[3] During periods of the defendant's competency, the parties filed three pretrial conference reports on November 16, 2012, March 22, 2013, and April 17, 2013, and selected "trial status" dates and trial dates. The prosecutor further requested a Haitian Creole interpreter and psychotropic medication for the defendant in preparation for a scheduled June 5, 2013, trial in the BMC.

[4] However, the judge did order a recalculation of the defendant's maximum dismissal date, taking into account his credits for time served. The result was that the defendant's dismissal date was computed as July 2, 2017, as opposed to his previously computed dismissal date of May 16, 2018.

court, seeking dismissal.  A single justice reserved and reported the case to the full court.

Discussion.  1.  Dismissal date calculation.  General Laws c. 123, § 16 (f),[5] ensures that a criminal defendant who is incompetent to stand trial does not face an indefinite pendency of criminal charges.  Foss v. Commonwealth, 437 Mass. 584, 589 (2002).  To that end, an incompetent defendant's charges must be dismissed on the day that he would have been eligible for parole if he had been "convicted of the most serious crime with which he was charged in court and sentenced to the maximum sentence he could have received."  G. L. c. 123, § 16 (f).  Under the statute, parole eligibility "shall be regarded as [available on the final date of] one half of the maximum . . . potential sentence."  Id.  Thus, an incompetent defendant's charge must be

_____

[5] General Laws c. 123, § 16 (f), provides:

"If a person is found incompetent to stand trial, the court shall send notice to the department of correction which shall compute the date of expiration of the period of time equal to the time of imprisonment which the person would have had to serve prior to becoming eligible for parole if he had been convicted of the most serious crime with which he was charged in court and sentenced to the maximum sentence he could have received, if so convicted. For purposes of the computation of parole eligibility, the minimum sentence shall be regarded as one half of the maximum . . . potential sentence. . . . On the final date of such period, the court shall dismiss the criminal charges against such person, or the court in the interest of justice may dismiss the criminal charges against such person prior to the expiration of such period."

dismissed after it has been pending for one-half of the maximum sentence he or she faces.  Id.

The defendant argues that the phrase "charged in court" in § 16 (f) refers to the forum in which the Commonwealth chooses to prosecute the case.[6]  Because the Commonwealth chose to prosecute his case in the BMC, he reasons, the calculation should be based upon the maximum sentence for assault and battery by means of a dangerous weapon in that court (a house of correction sentence of two and one-half years) rather than the maximum for that crime in the Superior Court (a ten-year State prison sentence).[7]

This court has previously considered and rejected this argument.  See Chubbuck v. Commonwealth, 453 Mass. 1018, 1019-1020 (2009), citing Foss, 437 Mass. at 591 n.10.  In Chubbuck, we declined to disturb a calculation based on a State prison sentence despite the fact that the defendant's charges of

---

[6] For many crimes, including the conduct at issue here, the Boston Municipal Court (BMC) or District Court has concurrent jurisdiction with the Superior Court.  G. L. c. 218, § 26. Charges may be brought by complaint in the BMC (or District Court), where the maximum sentence regardless of the crime is two and one-half years in a house of correction, or by indictment by grand jury in the Superior Court, where longer sentences in State prison may be imposed.

[7] The defendant's calculation yields a maximum parole eligibility date of fifteen months and would thus entitle him to immediate dismissal of the charge.

indecent assault and battery and breaking and entering were pending in District Court. Chubbuck, supra.

The defendant claims that his case is distinguishable from Chubbuck because here there are "objective indicia" that the Commonwealth planned to prosecute his case in the BMC.[8] There is nothing in the language of the statute suggesting that the § 16 (f) dismissal date calculation requires the Department of Correction (department) to determine the court department in which the prosecutor will ultimately choose to proceed. Further, there is nothing in the statute to suggest that the calculation is intended to be reliant upon a prosecutor's decision to indict or that it should vary amongst defendants charged with the same offense. "We do not read into the statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include." Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 126 (2006).

2. Constitutional claims. The defendant argues that the statute violates the Federal and State Constitutions, as well as his right to a grand jury indictment.[9]

---

[8] See note 3, supra.

[9] The defendant separately argues that the department's interpretation of § 16 (f) violates the Americans with

He first claims that the unequal treatment of incompetent and competent defendants violates his right to equal protection under the law. The defendant does not expand on this argument, and in fact, the two categories of defendants are not similarly situated. While a competent defendant will either proceed to trial and face possible conviction or else plead guilty, the only inevitability for a defendant who is found to be (and remains) incompetent to stand trial is that his or her charges will be dismissed.[10]

The defendant also argues that § 16 (f) intrudes upon his fundamental right to liberty; we analyze this argument on substantive due process grounds. See Commonwealth v. Weston W., 455 Mass. 24, 41-42 (2009) (Spina, J., concurring). We apply strict scrutiny analysis to determine whether the statute is

_____

Disabilities Act (ADA), 42 U.S.C. § 12132 (2012). We disagree. Although the defendant claims that he is a qualified disabled individual and that services provided by the BMC and Bridgewater are subject to the statute, he advances no argument as to how he has been denied appropriate services by either entity. See Williams v. Secretary of the Executive Office of Human Servs., 414 Mass. 551, 556-558 (1993). All of the statutory protections for persons suffering from mental illness under G. L. c. 123 remain available to him. "The ADA has no applicability in this matter." Commonwealth v. Burgess, 450 Mass. 366, 377 n.12 (2008).

[10] We have held previously, albeit in a different context, that providing additional procedural protections for incompetent defendants is constitutional, despite the resulting disparate treatment of otherwise similarly situated defendants. Burgess, 450 Mass. at 376-377.

narrowly tailored to achieve a compelling State interest, and conclude that it is.  See id. at 43-44 (Spina, J., concurring).

Section 16 (f) serves at least two compelling State interests:  (1) protecting mentally ill defendants from the indefinite pendency of criminal charges as a result of their incompetency to stand trial, see Foss, 437 Mass. at 589; and (2) protecting the public from potentially dangerous persons.[11]  The statute is narrowly tailored to allow the Commonwealth some time to pursue the legitimate and proper purpose of prosecuting charged crimes, but not for a period of time longer than is reasonably necessary to ascertain the defendant's chances of regaining competency.  As an additional safeguard, § 16 (f) allows for dismissal of charges even before the maximum parole eligibility date has been reached "in the interest of justice."

Finally, the defendant argues that § 16 (f) subjects incompetent defendants to what amounts to a State prison sentence without a constitutionally required indictment by a grand jury.  See Brown v. Commissioner of Correction, 394 Mass. 89, 91-92 (1985).  This argument overlooks the fact that a determination of incompetency does not automatically lead to confinement.  Under G. L. c. 123, § 16 (b) and (c), only those incompetent criminal defendants who are mentally ill and a

---

[11] The latter interest is "not diminished when that person happens to be incompetent to stand trial."  Burgess, 450 Mass. at 376.

danger to themselves or others are confined at Bridgewater. Defendants who are incompetent but not dangerous may post bail like any other defendant.[12]  In any case, persons who are otherwise civilly committed (e.g., under G. L. c. 123, §§ 7 and 8) are not serving the equivalent of a criminal sentence.  See Commonwealth v. Gillis, 448 Mass. 354, 360 (2007).  The circumstance of an incompetent defendant who is held because he or she is dangerous is more akin to that of a competent defendant held for the same reason, except that in the former case the charges will be dismissed if the defendant remains incompetent whereas in the latter case the defendant will be tried and, if found guilty, sentenced.  Compare G. L. c. 123, § 16 (b), (c) (commitment for mental illness and dangerousness), with G. L. c. 276, § 58A (pretrial custody without bail for dangerousness).

---

[12] Persons cannot be committed indefinitely on account of their incompetency.  Foss, 437 Mass. at 589.  See Jackson v. Indiana, 406 U.S. 715, 720 (1972).  Section 16 (f) refers only to the pendency of criminal charges and "does not distinguish between defendants who have been committed and those who have not."  Foss, supra at 587 n.2.  Defendants can be civilly committed under § 16 (b) or (c), but such commitment is predicated on a finding that the defendant is mentally ill and dangerous under §§ 7 and 8.  These sections are the same ones that govern the involuntary civil commitment of noncriminal defendants.  Thus, dismissal of criminal charges pursuant to § 16 (f) would not necessarily lead to a person's release from commitment because the person could be civilly committed under §§ 7 and 8 if he or she remained mentally ill and dangerous. See note 14, infra.

3.  <u>Dismissal in the interest of justice</u>.  As mentioned
previously, in addition to providing for the calculation of the
dismissal date of charges against an incompetent defendant,
§ 16 (<u>f</u>) contains a "safety valve" that allows a judge to
dismiss charges prior to the calculated parole eligibility date
"in the interest of justice."  Thus, the judge may consider
factors that are not relevant to the statutory computation.  Use
of the safety valve may be warranted in a case where, as the
defendant claims is true here, the defendant's chances of being
restored to competency are slim.  Although the Commonwealth
argues that the defendant may yet regain competency and remain
so at least long enough to stand trial, his most recent
prognosis (March, 2016) appears to indicate otherwise.[13]  See,
e.g., Commonwealth <u>vs</u>. Guinta, Mass. Superior Ct., No. 2004-
00088 (Norfolk County Mar. 31, 2011) (dismissing incompetent
defendant's charges pursuant to § 16 [<u>f</u>] where it had become

---

[13] The defendant has struggled with mental illness since at
least 2003.  He has been deemed incompetent for more than half
of the time since the charge was brought in this case.
Bridgewater's March 3, 2016, assessment of the defendant's
chances of being restored to competency in this case was that
they are poor given his "longstanding delusional beliefs," among
other issues.  We further note that although § 16 (<u>f</u>) refers
only to the pendency of charges, not commitment, the length of a
defendant's commitment may nevertheless be considered in whether
to dismiss charges in the interest of justice because the
"pendency of criminal charges . . . often . . . significantly
limit[s an] incompetent defendant's access to treatment by more
effective civil means."  <u>Foss</u>, 437 Mass. at 589.

clear over period of years that defendant would never become competent).

Conclusion. For the reasons discussed, the defendant's petition for relief under G. L. c. 211, § 3, is denied. The case is remanded to the BMC for further proceedings consistent with this opinion.[14]

So ordered.

---

[14] The defendant's civil commitment under § 16 (c) runs until June 13, 2017. It is not before us whether the dismissal of charges pursuant to the § 16 (f) safety valve would have an impact on that commitment, or, if so, whether Bridgewater would have notice and an opportunity to petition for commitment under §§ 7 and 8 before his release. The parties are free to litigate these issues on remand. See Matter of E.C., 89 Mass. App. Ct. 813, further appellate review granted, 476 Mass. 1103 (2016).