NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12165

STANLEY V. SHARRIS, JR. vs. COMMONWEALTH.

Suffolk.    December 7, 2017. - September 17, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Cypher, & Kafker, JJ.


Due Process of Law, Competency to stand trial.  Incompetent
    Person, Criminal charges.  Practice, Criminal, Indictment,
    Dismissal, Competency to stand trial, Defendant's
    competency.  Homicide.



    Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on May 17, 2016.

    The case was considered by Hines, J.


    Paul R. Rudof, Committee for Public Counsel Services, for
the defendant.
    Heidi M. Ohrt-Gaskill, Assistant District Attorney, for the
Commonwealth.
    Crystal L. Lyons, Assistant District Attorney, for the
District Attorney for the Northern District, was present but did
not argue.
    Kevin S. Prussia, Matthew C. Tymann, & Annaleigh E. Curtis,
for Massachusetts Association of Criminal Defense Lawyers,
amicus curiae, submitted a brief.


    GAZIANO, J.  General Laws c. 123, § 16 (f), provides for

the dismissal of criminal charges when an individual is found

incompetent to stand trial.  The statute requires mandatory dismissal of charges at the time when the individual would have been eligible for parole if he or she had been convicted and had been sentenced to the maximum statutory sentence.  See id.  The statute also provides courts with the discretion to dismiss criminal charges "prior to the expiration of such period."  Id.

The defendant,[1] who is now seventy-four years old, was charged with murder in the first degree and interfering with a fire fighter in 1994, when he was fifty-one years old.  At that time, he was deemed incompetent to stand trial.  Since then, he continually has been deemed incompetent, and at this point, the Commonwealth has conceded that he is permanently incompetent. The nature of the defendant's mental impairment, a form of alcohol-induced dementia, is such that it is permanent, degenerative, and not amenable to any form of treatment. Additionally, his physical condition is deteriorating, and he is now physically frail, nourished through a feeding tube, and bedridden.  It is likely that his physical condition also will continue to worsen.  Due to the level of medical care he requires, in August, 2015, the defendant was released on bail, with conditions, so he could be placed in a hospital setting. He is civilly committed to the Department of Mental Health

---

[1] Although the petitioner commenced this action by filing a petition in the county court, for convenience, we refer to him as "the defendant."

(DMH), and is being cared for in an unlocked wing of a public hospital operated by the Department of Public Health (DPH).

Although G. L. c. 123, § 16 (f), does not explicitly exclude murder in the first degree from its provisions for dismissal, it does so effectively, because the statute is based on the date of parole eligibility, and there is no parole eligibility date for the offense of murder in the first degree. The defendant contends that the charges against him nonetheless should be dismissed, either under the provision allowing discretionary release or on constitutional grounds. Beginning in 2001, through May, 2016, the defendant has filed motions to dismiss, and motions for reconsideration, arguing that G. L. c. 123, § 16 (f), violates his right to substantive due process because it restricts his fundamental right to liberty and is not narrowly tailored to achieve compelling State interests. See Commonwealth v. Calvaire, 476 Mass. 242, 246 (2017). All of these motions have been denied. In May, 2016, the defendant sought relief pursuant to G. L. c. 211, § 3, from the denial of his most recent motion for reconsideration. He thereafter appealed to this court from the denial of his petition.

For the reasons that follow, we conclude that maintaining pending charges against an incompetent defendant in those rare circumstances, such as here, where a defendant will never regain competency, and where maintaining the charges does not serve the

compelling State interest of protecting the public, is a violation of the defendant's substantive due process rights.[2]

1. Background. The essential facts are uncontested. On December 25, 1994, the defendant was arrested for the beating death of his father; he also was charged with attempting to obstruct fire fighters who were responding to smoke coming from the house where the defendant and his father lived. In January, 1995, a grand jury indicted the defendant on one charge of murder in the first degree and one charge of interfering with a fire fighter.

Prior to his arraignment, the defendant was examined for competency to stand trial, pursuant to G. L. c. 123, § 15 (a). In December, 1994, he was found to be incompetent to stand trial and committed to Bridgewater State Hospital (Bridgewater) for a period of six months. See G. L. c. 123, § 16 (b). Since then, he repeatedly has been reexamined and recommitted, for most of that period pursuant to G. L. c. 123, § 16 (c), and remains incompetent.

Following a competency examination of the defendant in February, 2013, the director of forensic services at Bridgewater filed a report concluding that the defendant was then incompetent to stand trial, and in his opinion would never be

---

[2] We acknowledge the amicus briefs submitted by the Massachusetts Association of Criminal Defense Lawyers and the district attorney for the Northern District.

competent; the director has reaffirmed that conclusion in subsequent reports.  In April, 2014, Bridgewater filed a petition for authorization for medical treatment of the defendant.  That motion was allowed.  In May, 2014, Bridgewater filed a motion that the defendant be treated by DMH.  The Commonwealth's motion for an independent medical examination was allowed, and the defendant's medical records were produced to the Commonwealth.  Thereafter, in June, 2014, an evidentiary hearing, at which testimony was taken, was conducted on Bridgewater's motion that the defendant be treated at a DMH facility.  The hearing was continued, and the motion was denied on July 31, 2014.  On the same day, the Commonwealth's petition for a renewal of the defendant's commitment, under G. L. c. 123, § 8, and request that all subsequent hearings be conducted in accordance with G. L. c. 123, §§ 7, 8, was allowed, and the defendant was civilly committed to Bridgewater for one year.

In July, 2015, the Commonwealth filed a motion to extend the defendant's prior commitment, originally ordered under G. L. c. 123, § 16 (b), and seeking that all subsequent hearings proceed under G. L. c. 123, §§ 7, 8.  In August, 2015, upon a motion by Bridgewater, the defendant was transferred to the custody of DMH and held on bail.  He was transferred to a joint DMH-DPH facility, where both DPH and DMH services are offered and where DPH operates hospital wards.  On September 15, 2015, a

competency hearing was held in the Brockton Division of the District Court Department. The defendant was found incompetent and was civilly committed to Bridgewater for one year, pursuant to G. L. c. 123, § 8. After a judge of the District Court visited the defendant at his bedside in the DPH hospital, the judge allowed Bridgewater's motion that DMH hold the defendant for one year. The Commonwealth "does not dispute . . . [the] assessment [by the director of forensic services at Bridgewater]" that the defendant "will never be competent to stand trial." At a hearing before a Superior Court judge in December, 2015, the Commonwealth conceded that the defendant will never be competent to stand trial.

During the course of his commitment to Bridgewater, the defendant repeatedly exhibited violent and assaultive behavior against health care staff, other patients, and correction officers. In addition to physical assaults, he was frequently verbally combative and engaged in numerous outbursts of yelling. He made sexually inappropriate comments and gestures towards female staff. In 2005, he attempted to strangle his roommate and thereafter was placed in a single-occupancy room.

In the last three years of the defendant's time at Bridgewater, however, his doctors noted that the defendant demonstrated "sustained improvement in his aggressive behavior" and that he was no longer engaging in the sexually aggressive

speech and behavior he had previously exhibited.  The most recent competency evaluation in the record, from 2015, indicated that the defendant's "infrequent aggression without injury" is typical for a person with the defendant's level of dementia, and that his behavior was "not at the level of seriousness of assaults in previous years."  "[H]is last serious assault of another patient occurred in November 2011."  Between 2012 and June, 2015, the defendant committed four assaults that caused no serious injuries or did not result in any injury.

The improvement in the defendant's behavior was partially attributable to his worsening physical and mental condition. According to the evaluations in the record, over the past twenty-two years, the defendant has been examined by eight forensic psychologists and psychiatrists.  Their general consensus is that the defendant suffers from Korsakoff syndrome, which is a form of substance-induced persisting dementia caused by the defendant's prior alcohol use.  The defendant's medical records indicate that he began exhibiting symptoms of mental impairment and certain physical difficulties at least as early as 1992, and doctors suspected that these were related to brain damage from alcohol abuse.  He also has a history in the records, from at least 1985 onward, of a head injury.  In addition, he has an ongoing seizure disorder, and brain scans have shown noticeable abnormalities.  During his commitment to

Bridgewater, the defendant's cognitive and physical capacities have significantly deteriorated, and they are not expected to improve.

Since 2013, the defendant "has become progressively physically weaker, and currently is bedridden and very weak physically." According to his most recent medical records, the defendant has a permanent feeding tube implanted in his stomach through which he receives all of his nutrition and medications, cannot walk on his own, and spends his time either in a hospital bed or a geriatric chair. He is so weak that an average adult could hold both of his hands with one hand, and he would not be able to pull away. The Commonwealth agreed that the defendant has been "physically frail" since at least 2015. In 2015, in the most recent medical evaluation in the records, the director of forensic services at Bridgewater opined that the defendant could "be managed in a less secure setting, such as a facility of [DMH], a medical unit at the [Lemuel] Shattuck Hospital, or a long-term care facility."

In August, 2015, the Commonwealth did not dispute Bridgewater's motion for the release of the defendant, on bail and with conditions, pursuant to G. L. c. 123, § 17 (c); Bridgewater's motion to transfer the defendant to the custody of DMH, so that he could be treated at a DMH facility, particularly for management of his feeding tube, was allowed. Shortly

thereafter, the Commonwealth assented to Bridgewater's motion to amend the special conditions of release so that the defendant could be moved to the medical unit of a DPH hospital ward, in a jointly operated facility, so that he could receive more appropriate medical care; that motion was allowed.

Since the motion to hold the defendant in the DPH hospital ward, under DMH custody, was allowed, the defendant has been held on that ward. He remains civilly committed to the custody of DMH, and DMH continues to follow his care, which is provided day-to-day by DPH staff. DMH has indicated that, if the charges are dismissed, it could seek the defendant's placement in a long-term care facility that could more appropriately manage his care.

2. Prior proceedings. In May, 2001, citing due process considerations, the defendant moved pursuant to G. L. c. 123, § 16 (f), to dismiss the charges. In August, 2002, a Superior Court judge denied the motion; he determined that the defendant had not been denied due process and that G. L. c. 123, § 16 (f), is not applicable to charges of murder in the first degree. In March, 2013, the defendant filed another motion to dismiss, again pursuant to G. L. c. 123, § 16 (f). In April, 2013, a different Superior Court judge denied that motion. The judge concluded that the statute is not applicable to charges of murder in the first degree and that, even if it is, he did not

believe it was in the interest of justice to dismiss the charges. In July, 2015, the defendant again moved to dismiss the indictments. That motion was denied in March, 2016, by a third Superior Court judge. In April, 2016, the defendant filed a motion for reconsideration of his motion to dismiss; he argued that the denial of his motion resulted in a violation of substantive due process. The motion was denied one week later. The judge concluded that due process is satisfied by the provisions of G. L. c. 123, § 16 (c), which requires annual reviews of competency for defendants who have been found incompetent to stand trial.

In May, 2016, the defendant filed a petition in the county court seeking relief pursuant to G. L. c. 211, § 3, from the denial of his motion for reconsideration. The defendant argued that review under G. L. c. 211, § 3, was appropriate, because he is permanently incompetent to stand trial, and would never have an adverse final judgment from which to appeal. The single justice concluded that the defendant had other avenues by which to seek relief and denied the motion without a hearing. In September, 2016, the defendant appealed to this court, pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001). In December, 2016, we issued an order allowing the defendant's appeal to proceed in the full court.

3.  Discussion.  The defendant argues that due process prohibits the Commonwealth from maintaining pending criminal charges indefinitely against a defendant who is permanently incompetent, and, therefore, that there must be some means of obtaining dismissal of a charge of murder in the first degree. The defendant contends that his charges may be dismissed either pursuant to G. L. c. 123, § 16 (f), which contains provisions for both mandatory dismissal and dismissal in the interest of justice, or by the inherent power of the courts to remedy violations of due process.  See Department of Mental Retardation v. Kendrew, 418 Mass. 50, 55 (1994) ("We recognize that the courts of the Commonwealth have certain inherent and implied powers in addition to those powers expressly enumerated in various statutes").

The defendant argues, first, that the court should conclude that a sentence of life in prison without the possibility of parole is unconstitutional when applied to permanently incompetent defendants, and should sever that portion of the murder statute, as applied to incompetent defendants, which prohibits parole.  Severance of the statute in such a manner would result in eligibility for parole for permanently incompetent defendants charged with murder in the first degree in a similar manner to those incompetent defendants who are

charged with murder in the second degree.[3]  See Diatchenko v.
District Attorney for the Suffolk Dist., 466 Mass. 655, 672-673
(2013), S.C., 471 Mass. 12 (2015) (holding that sentence of life
in prison without possibility of parole is unconstitutional when
applied to juvenile defendants, and therefore severing that
portion of murder statute).  Alternatively, the defendant argues
that G. L. c. 123, § 16 (f), which permits dismissal in the
interest of justice, could be interpreted to apply to all
crimes, regardless of parole eligibility.  Lastly, the defendant
suggests that this court could create a remedy to resolve any
due process violation.

The Commonwealth contends, however, that there is no due
process violation, and that G. L. c. 123, § 16 (f), is narrowly
tailored to serve the compelling State interest of protecting
public safety.  In this view, the Legislature implicitly
excluded defendants charged with murder in the first degree by
hinging the dismissal of charges on eligibility for parole.[4]

---

[3] At the time of the defendant's arrest, defendants
convicted of murder in the second degree were eligible for
parole after fifteen years.  After the United States Supreme
Court's decision in Miller v. Alabama, 567 U.S. 460 (2012), the
Legislature revised the murder statute.  Currently, defendants
who are convicted of murder in the second degree are eligible
for parole at a period of from fifteen to twenty-five years
after sentencing, to be determined by the sentencing judge.  See
G. L. c. 127, § 133A; G. L. c. 279, § 24.

[4] All other offenses which permit a life sentence also have
a statutory parole date that follows a fixed number of years;

Such an exclusion is justified, the Commonwealth suggests,
because murder in the first degree is different in kind from
other crimes. See G. L. c. 277, § 63 (no statute of limitations
for murder). See also Commonwealth v. Francis, 450 Mass. 132,
135 (2007), S.C., 477 Mass. 582 (2017) ("It is reasonable for
the Legislature to treat defendants facing a charge of murder in
the first degree differently from other defendants").

Although the language of G. L. c. 123, § 16 (f), read in
conjunction with G. L. c. 265, § 1, excludes defendants charged
with murder in the first degree from being eligible for
dismissal of charges under that provision, substantive due
process requires a statute affecting a fundamental right to be
narrowly tailored to achieve compelling government interests.
See Calvaire, 476 Mass. at 246. While murder in the first
degree is the gravest of charges, we conclude that substantive
due process requires dismissal of the charges where a defendant
will never regain competency and maintaining the charges does
not serve the compelling State interest of protecting the
public.

a. General Laws c. 123, § 16 (f). General Laws c. 123,
§ 16 (f), is intended to ensure that criminal defendants who are
incompetent to stand trial are not left facing the indefinite

for no offense is this period greater than that for a conviction
of murder in the second degree. See G. L. c. 127, § 133A; G. L.
c. 279, § 24.

pendency of criminal charges.[5]  See Calvaire, 476 Mass. at 244,

citing Foss v. Commonwealth, 437 Mass. 584, 589 (2002).  The

statute requires dismissal of criminal charges on "the date of

the expiration of the period of time equal to the time of

imprisonment which the person would have had to serve prior to

becoming eligible for parole if he had been convicted of the

most serious crime with which he was charged in court and

sentenced to the maximum sentence he could have received."

G. L. c. 123, § 16 (f).  Alternatively, a court may, in the

interest of justice, dismiss pending charges "prior to the

expiration of such period," i.e., during the period before a

convicted defendant would be eligible for parole under the

provision requiring mandatory dismissal.  Id.

-------------------

[5] General Laws c. 123, § 16 (f), provides:

"If a person is found incompetent to stand trial, the
court shall send notice to the department of correction
which shall compute the date of the expiration of the
period of time equal to the time of imprisonment which the
person would have had to serve prior to becoming eligible
for parole if he had been convicted of the most serious
crime with which he was charged in court and sentenced to
the maximum sentence he could have received, if so
convicted.  For purposes of the computation of parole
eligibility, the minimum sentence shall be regarded as one
half of the maximum sentence potential sentence.  Where
applicable, the provisions of [G. L. c. 127, §§ 129, 129A,
129B, and 129C,] shall be applied to reduce such period of
time.  On the final date of such period, the court shall
dismiss the criminal charges against such person, or the
court in the interest of justice may dismiss the criminal
charges against such person prior to the expiration of such
period."

"Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" Sheehan v. Weaver, 467 Mass. 734, 737 (2014), quoting Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010). "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent." Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008). That said, "[w]e will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable." Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982). See Black's Law Dictionary 11-12 (10th ed. 2014) (defining "absurdity" as "being grossly unreasonable" and "[a]n interpretation that would lead to an unconscionable result, esp. one that . . . the drafters could not have intended").

Taken in conjunction with the provisions on murder in the first degree that exclude anyone convicted under G. L. c. 265, § 1, from eligibility for parole, G. L. c. 123, § 16 (f), implicitly excludes dismissal of charges for which a defendant who is convicted and sentenced to the maximum sentence would never be eligible for parole. This is so because, where it is not possible to compute the date on which a person would become eligible for parole on a charge, the charge cannot be dismissed

on that date, and a court cannot, in the interest of justice, dismiss the charge prior to that date.

Here, the most serious crime with which the defendant was charged is murder in the first degree.  If he had been convicted of that offense, he would have been sentenced to the mandatory sentence of life in prison without the possibility of parole. Under the plain language of G. L. c. 265, § 1, therefore, a defendant charged with that offense is never eligible for dismissal of pending charges in accordance with G. L. c. 123, § 16 (f).

b.  Substantive due process.  The defendant contends that the plain meaning of G. L. c. 123, § 16 (f), as discussed supra, violates the due process clauses of art. 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution when applied to permanently incompetent defendants charged with murder in the first degree.  We analyze his claim on substantive due process grounds.  See Calvaire, 476 Mass. at 246.  Accordingly, where the statute interferes with a fundamental liberty interest, we apply strict scrutiny analysis to the defendant's claim to determine whether G. L. c. 123, § 16 (f), is narrowly tailored to achieve a compelling State interest.  See Aime v. Commonwealth, 414 Mass. 667, 673 (1993).

i.  The defendant's liberty interest.  In August, 2015, on a motion by Bridgewater that was unopposed by the Commonwealth,

the defendant was released on bail, on conditions, and was transferred from the custody of Bridgewater to the custody of DMH, pursuant to G. L. c. 123, § 17 (c), so that he could receive more appropriate medical care.  He remains civilly committed pursuant to G. L. c. 123, §§ 7, 8, in continuation of his commitment under G. L. c. 123, § 16 (c).  The defendant claims, however, that his liberty interest is impaired by the pendency of criminal charges against him.  Although he is able to reside in an unlocked medical unit at Lemuel Shattuck Hospital, the pending charges prevent him from being able to seek care in a long-term care facility that could better suit his medical and mental health needs.  Furthermore, pending criminal charges may cause "anxiety, forfeiture of opportunity, and damage to reputation, among other conceivable injuries." Williams, petitioner, 378 Mass. 623, 626 (1979).

In Jackson v. Indiana, 406 U.S. 715, 738 (1972), the United States Supreme Court held that an incompetent defendant cannot be committed based solely on his incompetency for longer than "the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [competency] in the foreseeable future."  Indefinite commitment of a defendant who is unlikely to regain competency intrudes on the defendant's substantial right of liberty.  Id. at 731-733. The Court explained:

"We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal. In light of differing [S]tate facilities and procedures and a lack of evidence in this record, we do not think it appropriate for us to attempt to prescribe arbitrary time limits. We note, however, that petitioner Jackson has now been confined for three and one-half years on a record that sufficiently establishes the lack of a substantial probability that he will ever be able to participate fully in a trial." (Footnote omitted.)

Id. at 738.

The Court declined, however, to decide whether due process requires dismissal of criminal charges against an incompetent person. See id. at 740 ("Dismissal of charges against an incompetent accused has usually been thought to be justified on grounds not squarely presented here: particularly, . . . the denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence. . . . We think . . . that the Indiana courts should have the first opportunity to determine these issues").[6]

---

[6] Very few State courts have addressed this issue. This may be a result of statutes in many States having been modified in

light of Jackson v. Indiana, 406 U.S. 715, 738 (1972), to permit broader dismissal of charges against incompetent individuals. Indeed, many State statutes employ the specific language from Jackson of "substantial probability that [a defendant] will attain that capacity [to proceed to trial] in the foreseeable future" to determine whether charges should be dismissed. See id. Thirty-two States appear to require or explicitly to allow dismissal of charges of murder in the first degree. See Alaska Stat. § 12.47.110; Ark. Code Ann. § 5-2-310; Cal. Penal Code § 1370.01; Colo. Rev. Stat. § 16-8.5-116; Fla. Stat. § 916.145; Ga. Code Ann. § 17-7-130; Haw. Rev. Stat. § 704-406; Idaho Code Ann. § 18-212; 725 Ill. Comp. Stat § 5/104-23; 15 Me. Rev. Stat. Ann. § 101-D; Md. Code Ann., Crim. Proc. § 3-107; Mich. Comp. Laws § 330.2044; Mo. Rev. Stat. § 552.020; Mont. Code Ann. § 46-14-221; Nev. Rev. Stat. § 178.460; N.H. Rev. Stat. Ann. § 135:17-a; N.J. Stat. Ann. § 2C:4-6; N.M. Stat. Ann. § 31-9-1.4; N.C. Gen. Stat. § 15A-1008; N.D. Cent. Code § 12.1-04-08; Okla. Stat. tit. 22, § 1175.6a; Or. Rev. Stat. § 161.370; 50 Pa. Cons. Stat. § 7403; R.I. Gen. Laws § 40.1-5.3-3; S.C. Code Ann. § 44-23-420; Tex. Code Crim. Proc. Ann. arts. 46B.071, 46B.151; Wash. Rev. Code §§ 10.77.084, 10.77.086; W. Va. Code § 27-6A-3; Wis. Stat. § 971.14; Ala. R. Crim. P. 11.6; Ariz. R. Crim. P. 11.6; State v. Davis, 898 N.E.2d 281, 286 (Ind. 2008).

Of those, twenty States require dismissal of charges of murder in the first degree after a defendant has been incompetent for a specific period of time. See Ala. R. Crim. P. 11.6; Alaska Stat. § 12.47.110; Fla. Stat. § 916.145; 725 Ill. Comp. Stat § 5/104-23; 15 Me. Rev. Stat. Ann. § 101-D; Md. Code Ann., Crim. Proc. § 3-107; Mich. Comp. Laws § 330.2044; Mo. Rev. Stat. § 552.020; Mont. Code Ann. § 46-14-221; Nev. Rev. Stat. § 178.460; N.H. Rev. Stat. Ann. § 135:17-a; N.M. Stat. Ann. § 31-9-1.4 (when defendant is also not dangerous); N.C. Gen. Stat. § 15A-1008; N.D. Cent. Code § 12.1-04-08; Okla. Stat. tit. 22, § 1175.6a; Or. Rev. Stat. § 161.370; 50 Pa. Cons. Stat. § 7403 (proceedings for murder in first degree or murder in second degree may not be stayed if there is no probability defendant will regain competency); R.I. Gen. Laws § 40.1-5.3-3; Wash. Rev. Code §§ 10.77.084, 10.77.086; Wis. Stat. § 971.14.

Other States exclude murder in the first degree -- and, in some instances, other serious crimes -- from their dismissal provisions, often explicitly. See Conn. Gen. Stat. § 54-56d; D.C. Code §§ 24-531.04, 24-531.08; Iowa Code § 812.9; La. Code Crim. Proc. Ann. art. 648; N.Y. Crim. Proc. Law § 730.50; S.D. Codified Laws §§ 23A-10A-14, 23A-10A-15; Tenn. Code Ann. § 33-7-

Nonetheless, in a series of opinions related to the right to a speedy trial under the Sixth Amendment to the United States Constitution, the United States Supreme Court has determined that a defendant's liberty interest may be restricted simply by the pendency of criminal charges, even where the defendant is not held in custody. Klopfer v. North Carolina, 386 U.S. 213, 221-222 (1967) ("The petitioner is not relieved of the limitations placed upon his liberty by this prosecution merely because its suspension permits him to go 'whithersoever he will.' The pendency of the indictment may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes"). See United States v. McDonald, 456 U.S. 1, 8-9 (1982) (same); United States v. Marion, 404 U.S. 307, 320 (1971) (same). See also State v. Davis, 898 N.E.2d 281, 290 (Ind. 2008) (quoting Klopfer, supra, in context of due process claim). The liberty interests of a defendant who has pending

---

301; Va. Code Ann. § 19.2-169.3; Minn. R. Crim. P. 20.01. The remaining States either do not have provisions related to dismissal of charges against incompetent defendants or allow dismissal only after proceedings similar to a hearing pursuant to G. L. c. 123, § 17 (b). See Del. Code Ann. tit. 11, §§ 403-404; Kan. Stat. Ann. § 22-3303; Ky. Rev. Stat. Ann. §§ 504.110, 504.150; Neb. Rev. Stat. § 29-1823; Ohio Rev. Code Ann. § 2945.38; Utah Code Ann. § 77-15-6; Vt. Stat. Ann. tit. 13, §§ 4820, 4822; Wyo. Stat. Ann. § 7-11-303; Miss. R. Crim. P. 12.5, 12.6.

charges are as fundamental in the due process context of the Fourteenth Amendment as they are in the Sixth Amendment context.

In other cases involving the essentially indefinite commitment of incompetent defendants, we have held that a defendant's liberty interests during the pendency of a criminal trial are fundamental rights. See Foss v. Commonwealth, 437 Mass. 584, 589 (2002) ("Among many other problems studied and addressed in the new mental health laws was the pretrial commitment of incompetent criminal defendants. A major thrust was to eliminate the highly questionable practice of committing incompetent criminal defendants indefinitely, while awaiting their unlikely restoration to competency, and also eliminating the indefinite pendency of criminal charges that, most often, significantly limited the incompetent criminal defendant's access to treatment by more effective civil means" [emphasis added]). See also Calvaire, 476 Mass. at 246 (applying strict scrutiny analysis in determining that G. L. c. 123, § 16 [f], does not violate due process because it allows Commonwealth "some time to pursue the legitimate and proper purpose of prosecuting charged crimes, but not for a period of time longer than is reasonably necessary to ascertain the defendant's chances of regaining competency"); Commonwealth v. Nieves, 446 Mass. 583, 590 (2006) (applying strict scrutiny in analyzing liberty interests of incompetent defendant in sexually dangerous

person hearing pursuant to G. L. c. 123A).  The defendant's claims, therefore, are subject to strict scrutiny analysis.  See Aime, 414 Mass. at 673.  The Commonwealth does not contest that the defendant's asserted liberty interest is a fundamental right.

    ii.  Strict scrutiny analysis.  To satisfy strict scrutiny, a statute "must be narrowly tailored to further a legitimate and compelling governmental interest and be the least restrictive means available to vindicate that interest."  Commonwealth v. Weston W., 455 Mass. 24, 35 (2009).  The "requirements for minimum due process may vary depending on the context."  See Commonwealth v. Burgess, 450 Mass. 366, 372 (2008), and cases cited.

    In Calvaire, 476 Mass. at 246, we concluded that G. L. c. 123, § 16 (f), was narrowly tailored to achieve the two compelling State interests of "protecting mentally ill defendants from the indefinite pendency of criminal charges as a result of their incompetency" and "protecting the public from potentially dangerous persons."  We noted that the statute affords the Commonwealth sufficient time to prosecute crimes, "but not for a period of time longer than is reasonably necessary to ascertain the defendant's chances of regaining competency."  Id.  The statute provides a method for calculating a maximum period of time prior to dismissal of charges against

all defendants except those charged with crimes that do not permit eligibility for parole, e.g., all crimes other than the offense of murder in the first degree.  We also noted the additional statutory safeguard that allows, in the interest of justice, the dismissal of pending charges before the expiration of the computed period of time.  Id.  Use of that "safety valve" may be warranted, we concluded, where "the defendant's chances of being restored to competency are slim."  Id. at 247.

In its opposition to the dismissal of charges in this case, the Commonwealth relies on the compelling government interest of public safety.  It describes in detail the defendant's history of violence prior to his father's murder and during his commitment to Bridgewater.  There is considerable evidence from competency evaluations, however, including the opinion of the director of forensic services at Bridgewater, that the defendant is now too physically weak to pose a danger to public safety.  Since 2013, the defendant "has become progressively physically weaker, and currently is bedridden and very weak physically."  He has a permanent feeding tube, cannot walk on his own, and spends his time either in a hospital bed or a geriatric chair.  He is so weak that another person could control both of his hands with one hand, and he would not be able to pull away.  The Commonwealth has acknowledged that the defendant was "physically frail" as of at least 2015; while it opposes the dismissal of

the pending charges, it did not oppose Bridgewater's motion in August, 2015, to transfer the defendant to DMH for a period of one year, as it had in prior years.

In addition to its assertion that incompetency is not evidence of a lack of guilt, the Commonwealth contends that the charges should not be dismissed because dismissal would prevent the district attorney from being notified of the defendant's location or any hearing related to his competency.  This argument is unavailing.  Pursuant to G. L. c. 123, § 16 (d), the district attorney must continue to be notified of any hearings conducted pursuant to any section of G. L. c. 123 for a person who was initially committed under G. L. c. 123, § 16 (b).[7]  The requirement of notification includes any future hearings on petitions for civil commitment or an extension of civil commitment pursuant to G. L. c. 123, §§ 7, 8.  See Matter of E.C., 479 Mass. 113, 122-123 (2018).  Moreover, any dismissal of charges pursuant to G. L. c. 123, 16 (f), is without prejudice, so in the unlikely event that a defendant whose charges had been dismissed were to regain competency, the Commonwealth would be

---

[7] General Laws c. 123, § 16 (d), provides:

"The district attorney for the district within which the alleged crime or crimes occurred shall be notified of any hearing conducted for a person under the provisions of this section or any subsequent hearing for such person conducted under the provisions of this chapter relative to the commitment of the mentally ill and shall have the right to be heard at such hearings."

able to reinstate the charges.  See Commonwealth v. Hatch, 438 Mass. 618, 624 (2003) (dismissal of charges pursuant to G. L. c. 123, § 17 [b], is without prejudice).

The Commonwealth also emphasizes that the Legislature has legitimate reasons for treating charges of murder in the first degree differently from other offenses.  See G. L. c. 277, § 63 (no statute of limitations for murder).  See also Francis, 450 Mass. at 135 ("It is reasonable for the Legislature to treat defendants facing a charge of murder in the first degree differently from other defendants").

Furthermore, notwithstanding the exclusion of defendants charged with murder in the first degree from eligibility for dismissal of charges under G. L. c. 123, § 16 (f), the Commonwealth contends that other statutory provisions provide additional safeguards to prevent indefinite commitment and afford incompetent defendants an alternative avenue for dismissal of charges.  General Laws c. 123, § 17 (c), allows a court to release a defendant, with or without bail, at any stage of a criminal proceeding,[8] and G. L. c. 123, § 17 (b), permits a

---

[8] General Laws c. 123, § 17 (c), provides:

"Notwithstanding any finding of incompetence to stand trial under the provisions of this chapter, the court having jurisdiction may, at any appropriate stage of the criminal proceedings, allow a defendant to be released with or without bail."

defendant to request a hearing that could result in dismissal of charges if there is insufficient evidence to support a conviction on those charges.[9]

The slim possibility that a judge in his or her own discretion might decide to release a particular defendant charged with murder on bail pursuant to G. L. c. 123, § 17 (c), however, does not address the fundamental liberty interest at issue here.  See Klopfer, 386 U.S. at 221-222 ("The petitioner is not relieved of the limitations placed upon his liberty by this prosecution merely because its suspension permits him to go 'whithersoever he will'").

General Laws c. 123, § 17 (b), as the Commonwealth notes, does allow incompetent defendants to petition for a hearing to have their charges dismissed, if they can "establish a defense

---

[9] General Laws c. 123, § 17 (b), provides:

"If either a person or counsel of a person who has been found to be incompetent to stand trial believes that he can establish a defense of not guilty to the charges pending against the person other than the defense of not guilty by reason of mental illness or mental defect, he may request an opportunity to offer a defense thereto on the merits before the court which has criminal jurisdiction. The court may require counsel for the defendant to support the request by affidavit or other evidence.  If the court in its discretion grants such a request, the evidence of the defendant and of the commonwealth shall be heard by the court sitting without a jury.  If after hearing such petition the court finds a lack of substantial evidence to support a conviction it shall dismiss the indictment or other charges or find them defective or insufficient and order the release of the defendant from criminal custody."

of not guilty to the charges pending against [them] other than the defense of not guilty by reason of mental illness or mental defect." This statute permits incompetent defendants to request a hearing at any time on the ground that they did not commit the crime charged; that the Commonwealth never had or no longer has sufficient evidence to prove that they committed the charged crime; or that a defense other than mental illness or mental defect, such as self-defense, applies. Furthermore, incompetent defendants could seek to disprove the elements that elevate murder from murder in the second degree to murder in the first degree. If, at a hearing on a motion under G. L. c. 123, § 17 (b), a defendant is able to demonstrate that the act was not committed with deliberate premeditation or extreme atrocity or cruelty -- depending on how the defendant was charged -- the most severe crime of which the defendant could be convicted should the defendant later become competent would be murder in the second degree. Defendants who are convicted of murder in the second degree are eligible for parole after a period of from fifteen to twenty-five years that is determined by the sentencing judge. See G. L. c. 265, § 2; G. L. c. 279, § 24. Accordingly, incompetent defendants who face a charge of murder in the second degree qualify for dismissal of charges pursuant to G. L. c. 123, § 16 (f).

The existence of this alternative avenue for dismissal of charges in specific circumstances does not, however, prevent a conclusion that G. L. c. 123, § 16 (f), violates substantive due process in the circumstances in this case.[10]  Because it is undisputed that the defendant will never become competent, allowing charges that can never be resolved at a trial to remain pending indefinitely is inconsistent with his right to substantive due process.  Compare Calvaire, 476 Mass. at 246 ("The statute is narrowly tailored to allow the Commonwealth some time to pursue the legitimate and proper purpose of prosecuting charged crimes, but not for a period of time longer than is reasonably necessary to ascertain the defendant's chances of regaining competency").  A statute is not narrowly tailored to achieve a compelling government interest where the stated interest is not at stake.  See Curtis v. State, 948 N.E.2d 1143, 1154 (Ind. 2011) ("Of course, the State's interests cannot be realized if there is a finding that a defendant cannot be restored to competency").  See also Commonwealth v. G.F., 479 Mass. 180, 196 (2018) ("[C]onfinement without legal

---

[10] The Legislature recently enacted a criminal justice reform bill that allows a prisoner who suffers from a terminal illness or permanent incapacitation "that is so debilitating that the prisoner does not pose a public safety risk" to be released on medical parole.  See G. L. c. 127, § 119A, inserted by St. 2018, c. 69, § 97.  This compassionate release program is available to all prisoners, including those convicted of murder in the first degree.

justification is never innocuous, . . . and the legal justification for confinement weakens after [a sexually dangerous person] trial is concluded without a finding of sexual dangerousness" [quotation and citation omitted]).

General Laws c. 123, § 16 (f), therefore satisfies the requirement of substantive due process only insofar as it is understood to allow the dismissal of charges, in the interest of justice, in circumstances such as these, where the defendant will never regain competency and does not pose a risk to public safety.

3. Conclusion. The matter is remanded to the county court for entry of an order allowing the defendant's petition pursuant to G. L. c. 211, § 3, and remanding the matter to the Superior Court for entry of an order allowing the defendant's motion to dismiss.

So ordered.